## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, <br><br> Defendants. | **Case No. 2:24-cv-00347** <br><br> Section L <br><br> District Judge Fallon <br><br> Magistrate Judge North <br><br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF[1]** |

### INTRODUCTION

1.  Plaintiffs are four Louisiana-based businesses in the trucking industry and one organization that advocates for them in Baton Rouge, Louisiana and Washington, D.C. on laws and regulations that affect the industry.

2.  Plaintiffs rely on independent owner-operator trucking labor as a core component of their businesses. But last month the U.S. Department of Labor published in

---

[1] Pursuant to Fed. R. Civ. P. 15(a), the original plaintiff, Frisard's Transportation, L.L.C., is allowed to amend a pleading once as a matter of course within 21 days after serving the complaint. *See* Affidavit of Service, ECF No. 8 (providing that service was perfected on February 15, 2024).

the Federal Register a new rule changing how independent contractors are classi-

fied. The new rule goes into effect on March 11, 2024.

3.  The federal agency's new rule alters established independent contractor clas-

sification and strips businesses like Plaintiffs of certainty. And it replaces the previ-

ous rule's objective factors with an open-ended balancing test inconsistent with the

Fair Labor Standards Act and U.S. Supreme Court and Fifth Circuit precedent.

4.  Plaintiffs challenge the rule—"Employee or Independent Contractor Classifi-

cation Under the Fair Labor Standards Act," 89 FR 1638—as arbitrary and capri-

cious and in excess of the Department of Labor's statutory authority.

5.  This Court should initially postpone the effective date of the rule pursuant to

5 U.S.C. § 705, and then set it aside in accordance with 5 U.S.C. § 706(2) to ensure

that Plaintiffs—and the independent owner-operator truckers with whom they vol-

untarily contract—can do business with the freedom and certainty to which they are

legally entitled based upon precedent they have relied on for decades.

## **<u>PARTIES</u>**

6.  Plaintiff Frisard's Transportation, L.L.C. ("Frisard's") is a family-owned-and-

operated transportation limited liability company in good standing, domiciled in St.

James Parish, Louisiana. Frisard's principal place of business is located at 315 S.

David Street, Gramercy, Louisiana 70052.

7.  Plaintiff Louisiana Motor Transport Association, Incorporated ("LMTA") is a

non-profit corporation in good standing that was founded in 1939, and it represents

388 Louisiana trucking and related industry companies. LMTA's mission is to

protect and promote Louisiana's trucking industry. LMTA is domiciled in East Baton Rouge Parish, Louisiana, and its principal place of business is located at 4838 Bennington Avenue, Baton Rouge, Louisiana 70808.

8.  Plaintiff A & B Group, Inc. ("A&B") is a trucking company in good standing that has operated since 1995. A&B is domiciled in Calcasieu Parish, Louisiana, and its principal place of business is located at 1401 East Napoleon Street, Sulphur, Louisiana 70663.

9.  Plaintiff Northlake Moving and Storage, Inc. ("Northlake") is a trucking company in good standing that has operated for over 40 years. Northlake is domiciled in St. Tammany Parish, Louisiana, and its principal place of business is located at 20252 Hwy. 36, Covington, Louisiana 70433.

10.  Plaintiff Triple G. Express, Inc. ("Triple G") is a family-owned trucking company in good standing that has operated since 1985. Triple G is domiciled in Jefferson Parish, Louisiana, and its principal place of business is located at 800 St. George Avenue, Ste. B, Jefferson, Louisiana 70121.

11.  Defendant United States Department of Labor ("DOL") is the federal agency within the Executive Branch responsible for issuing the challenged rule. The DOL is headquartered in the Frances Perkins Building, 200 Constitution Avenue NW, Washington, D.C., 20210.

12.  Defendant Julie Su is the Acting Secretary of Labor, and pending nominee for the position of Secretary of Labor. She is sued in her official capacity. Her office

is located at DOL's headquarters in the Frances Perkins Building, 200 Constitution Avenue NW, Washington, D.C., 20210.

13. Defendant Jessica Looman is the Administrator of the Wage and Hour Division, within the DOL, that promulgated the challenged rule. She is sued in her official capacity. Her office is located at DOL's headquarters in the Frances Perkins Building, 200 Constitution Avenue NW, Washington, D.C., 20210.

14. Defendant Wage and Hour Division is the division within the DOL responsible for issuing the challenged rule and is headquartered in the Frances Perkins Building, 200 Constitution Avenue NW, Washington, D.C., 20210.

## JURISDICTION AND VENUE

15. The Court has jurisdiction pursuant to 5 U.S.C. §§ 702 and 703; 28 U.S.C. §§ 1331 and 1346; 28 U.S.C. § 2201; Rules 57 and 65 of the Federal Rules of Civil Procedure; and the general legal and equitable powers of this Court.

16. Venue is proper because a substantial part of the events giving rise to the claims occurred in the Eastern District of Louisiana, and Plaintiff Frisard's—the original plaintiff—is domiciled in the Eastern District of Louisiana. *See* 28 U.S.C. § 1391(b)(2); 5 U.S.C. § 703.

## FACTUAL ALLEGATIONS

### A. The Fair Labor Standards Act

17. Enacted by Congress in 1938, the Fair Labor Standards Act ("FLSA") regulates minimum wages, overtime pay, and various other aspects of the employment relationship between covered employers and employees. *See* 29 U.S. Code § 201.

4

18. The FLSA itself provides very general—in some ways tautological—definitions of "employer," "employee," and what it means for one to "employ" the other.

19. "Employer" is defined to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee," except labor organizations and union officials, while "the term 'employee' means any individual employed by an employer." 29 U.S. Code § 203(d), (e)(1). Meanwhile, "'Employ' includes to suffer or permit to work." § 203(g).

20. The traditional common law rule dividing employees from independent contractors was based on a "control test," under which an employee is "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." Restatement (Second) of Agency § 220.

21. The Supreme Court, however, held that, with the National Labor Relations Act ("NLRA"), Congress intended to "reject conventional limitations on such conceptions as 'employee,' 'employer,'" and instead "determined broadly, in doubtful situations, by underlying economic facts" who counts as an employee "rather than technically and exclusively" using "previously established legal classifications." *NLRB v. Hearst Publ'ns*, 322 U.S. 111, 129 (1944).

22. Shortly thereafter in *United States v. Silk*, 331 U.S. 704, 713 (1947), the Supreme Court applied and extended the *Hearst* principle to the Social Security Act ("SSA"), finding that its definition of "employee" "included workers who were such as a matter of economic reality."

23. *Silk* expanded on *Hearst* by suggesting guiding factors, such that the "Social Security Agency and the courts will find that degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation are important for decision." 331 U.S. at 716.

24. Then the Supreme Court further extended its analysis in *Hearst* and *Silk* under the NLRA and SSA, to the Fair Labor Standards Act ("FLSA") in *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 723 (1947), finding its prior decisions "persuasive in the consideration of a similar coverage under the [FLSA]."[2]

25. In interpreting the FLSA, the Fifth Circuit applies the five *Silk* factors to determine when someone is an independent contractor: "degree of control, opportunities for profit or loss, investment in facilities, permanency of relation, and skill required." *Usery v. Pilgrim Equip. Co.,* 527 F.2d 1308, 1311 (5th Cir. 1976).

26. In applying the *Silk* factors to determine whether someone is an independent contractor, the Fifth Circuit has found that "[t]wo factors have emerged as critically significant in answering this question: (1) how specialized the nature of the work is, and (2) whether the individual is 'in business for himself.'" *Castillo v. Givens*, 704 F.2d 181, 190 (5th Cir. 1983) (quoting *Mitchell v. John R. Cowley & Brothers, Inc.*, 292 F.2d 105, 108 (5th Cir.1961)).

---

[2] Congress eventually overruled the Supreme Court as to the interpretation of "employee" in both the NLRA and SSA contexts, but never amended the FLSA. Thus, although *Hearst* and *Silk* have been overruled by subsequent statute, *Rutherford* remains good law.

27. "The first factor"—how specialized the nature of the work is—"looks to whether the individual 'regularly performs tasks essentially of a routine nature and that work is a phase of the normal operations of that particular business.'" *Castillo*, 704 F.2d at 191 (quoting *Mitchell*, 292 F.2d at 108).

28. "[T]he second factor"—whether the worker is "in business for himself"—is the "focal inquiry in the characterization process: whether the individual is or is not, as a matter of economic fact, in business for himself." *Castillo*, 704 F.2d at 191 (quoting *Donovan v. Tehco, Inc*., 642 F.2d 141, 143 (5th Cir. 1981)).

**B. The 2021 Rule**

29. In January 2021, the DOL issued a rule providing for the first time an official interpretation of when a worker qualifies as an employee as opposed to an independent contractor. *See* 86 FR 1168.

30. The 2021 Rule reconciled decades of inconsistency and set forth a formal interpretation of the traditional *Silk* standards, following established legal precedent to provide clarity to employers regarding the distinction between employees and independent contractors.

31. The 2021 Rule likewise found, similarly to the Fifth Circuit in *Castillo*, that in practice two factors in particular predominate: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss.

32. Under the 2021 Rule, if the two key factors give a clear answer, that is the end of the analysis.

33. Under the 2021 Rule, if the two key two factors point in disparate directions, then there are three additional factors for a court to consider: (3) the amount of skill required for the work; (4) the degree of permanence of the working relationship; and (5) whether the work is part of an integrated unit of production.

34. Not long after the 2021 Rule was issued, the DOL attempted to suspend it and then rescind it, but a federal district court overturned those agency decisions as violations of the Administrative Procedure Act. *See Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 U.S. Dist. LEXIS 68401 (E.D. Tex. Mar. 14, 2022).

35. A final judgment was entered in that case holding that the 2021 Rule "became effective as of March 8, 2021, the rule's original effective date, and remains in effect." *Id*. at *49.[3]

**C. The 2024 Rule**

36. On January 10, 2024, the DOL and Wage and Hour Division issued and published a new final rule providing yet another new interpretation of the distinction between employees and independent contractors under the FLSA. *See* 89 FR 1638. The new rule's effective date is March 11, 2024. *Id*.

37. In the published final 2024 Rule, the DOL stated that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." *Id*. at 1660.

---

[3] On appeal the Fifth Circuit stayed the proceedings pending new rulemaking and recently lifted the stay and remanded to the district court so the plaintiffs/appellees could file an amended complaint. *See* 22-40316, ECF No. 82 (5th Cir. Feb. 19, 2024).

38. The DOL acknowledged that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding and replacing the 2021 Rule. *Id*. But then it said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." *Id*.

39. The 2024 Rule rejects the core factors recognized by the Fifth Circuit, instead insisting on a so-called "totality of the circumstances" analysis, invoking six nonexclusive factors that a court could look to when determining employee status: (1) workers' opportunity for profit or loss depending on managerial skill; (2) investments made by worker and employer; (3) degree of permanence of the work relationship; (4) nature and degree of businesses' control over the worker; (5) extent to which work performed is an integral part of the potential employer's business; and (6) whether the worker uses specialized skills in performing the work. 89 FR 1640.

40. Five of these six elements follow the *Silk* factors. The sixth—whether the work performed is an "integral part of the employer's business"— is not one of the *Silk* factors, but is a variation on language from *Rutherford*, which described the butchers in that case as "work[ing] as a part of the integrated unit of production under such circumstances that the workers performing the task were employees of the establishment."

41. The new "six element" test adopted by the 2024 Rule draws on some other circuits outside of the Fifth Circuit that have treated this language in *Rutherford* as a sixth element to add to the original five *Silk* factors. *See, e.g., Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979).

42. The new six-element test is not consistent with how the Fifth Circuit has interpreted the FLSA when classifying employees and independent contractors.

43. The sixth element, as proposed in the 2024 Rule, is not even consistent with *Rutherford* itself, on which it is purportedly based. That case discussed whether the workers were part of an "integrated unit of production," whereas the 2024 Rule asks if workers are an "integral part of the employer's business." This is a critical distinction where the new 2024 Rule significantly deviates from the *Rutherford* principles.

44. By example, these are entirely different questions: an independent contractor can easily be an integral part of a company's business without being integrated into a unit of production.

45. Consider that a handyman who stops by to fix a stove or unclog a toilet can be integral to keeping a restaurant up and running for the public, but the handyman is still not integrated into the employer's business.

46. Or the delivery driver for the florist who only does deliveries on special occasions and holidays such as Valentines Day—the driver is integral to that specific service, but not integrated into the florist's day-to-day business.

**D. Plaintiffs and their Injuries**

*Frisard's*

47. Since 2014, Plaintiff Frisard's has been a family-owned trucking company specializing in transporting finished goods to stock the shelves of supermarkets and other retail stores, among other cargo. Frisard's relies on independent contracting labor as a core necessity of its business.

48. Frisard's transports cargo throughout the southern and eastern United States, from Texas and Nebraska to Maryland and Florida, wherever its clients need cargo delivered.

49. Frisard's is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule. Frisard's has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

50. Frisard's has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill Frisard's customer's needs.

51. Frisard's contracts with more than thirty owner-operated independent drivers who own their own trucks, decide which loads to carry or not, and who are paid a flat percentage of shipping fee for a given load, plus reimbursable expenses such as fuel which are passed on to the client.

52. Frisard's utilizes only independent owner operators to make deliveries, and employs no in-house drivers. By contrast, a related but separate company, Frisard's Trucking Co., employes a staff of in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned.

53. Frisard's use of independent owner-operators is beneficial to both Frisard's itself, which is able to operate more efficiently and reduce excess costs, and to Frisard's independent contractors, who assume more responsibility for their own

business operations but gain autonomy and the opportunity to derive greater profit from their work.

54. Frisard's will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

55. For example, the 2024 Rule threatens to upend Frisard's business operations, increasing costs, depriving truckers of the opportunity to operate independently within their own business, and potentially driving many of the independent contractors Frisard's relies on out of business, or into different lines of business other than Frisard's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered.

*LMTA*

56. Plaintiff LMTA's members include every type of motor carrier in Louisiana, including related and exempt, intrastate and interstate, and for-hire and private.

57. LMTA champions the trucking industry and advocates for its members on laws and regulations in Baton Rouge, La., and in Washington, D.C.

58. LMTA's members are subject to the FLSA, the 2021 Rule, and the 2024 Rule, and they rely on independent contracting labor as a core necessity of their business. Moreover, LMTA's members have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent contracting labor.

59. LMTA's members' use of independent owner-operators benefits both employer members, who are able to operate more efficiently and reduce excess costs, and to members' independent contractors, who assume more responsibility for their

own business operations but gain autonomy and the opportunity to derive greater profit from their work.

60. LMTA's employer members will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

61. For example, the 2024 Rule threatens to upend LMTA's employer members' business operations, increase costs, and deprive independent owner-operator truckers of the opportunity to work independently within their own business.

62. Moreover, the 2024 Rule could potentially drive many of the independent contractors LMTA's employer members rely on out of business, or into different lines of business other than LMTA's members' businesses, depriving them of needed manpower to deliver cargo wherever their clients need it delivered.

*A&B*

63. Plaintiff A&B specializes in delivering liquid and dry bulk long haul services and transports cargo to all 50 U.S. states and Canada.

64. A&B is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. A&B has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

65. A&B has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs.

66. A&B contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel.

67. A&B also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned.

68. A&B's use of independent owner-operators is beneficial to both A&B itself, which is able to operate more efficiently and reduce excess costs, and to A&B's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

69. A&B will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

70. For example, the 2024 Rule threatens to upend A&B's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors A&B relies on out of business, or into different lines of business other than A&B's business, depriving it of needed manpower to deliver cargo wherever clients need it delivered.

*Northlake*

71. Plaintiff Northlake specializes in transportation and storage of household goods, office furniture, and special products and transports cargo to 48 U.S states.

72. Northlake is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. Northlake has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

73. Northlake has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs.

74. Northlake contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel.

75. Northlake also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned.

76. Northlake's use of independent owner-operators is beneficial to both Northlake itself, which is able to operate more efficiently and reduce excess costs, and to Northlake's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

77. Northlake will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

78. For example, the 2024 Rule threatens to upend Northlake's business operations, increasing costs, depriving truckers of the opportunity to work independently

within their own business, and potentially driving many of the contractors North-lake relies on out of business, or into different lines of business other than North-lake's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered.

*Triple G*

79. Triple G is an intermodal carrier serving the Port of New Orleans Markets.

80. Triple G transports cargo throughout the Southeastern United States, including Louisiana, Texas, Mississippi, and Alabama, wherever their clients need cargo delivered.

81. Triple G is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. Triple G has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor.

82. Triple G has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs.

83. Triple G contracts with 100 independent drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel.

84. Triple G utilizes only independent owner-operators to make deliveries and employs no in-house drivers.

85. Triple G's use of independent owner-operators is beneficial to both Triple G's itself, who is able to operate more efficiently and reduce excess costs, and to Triple G's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work.

86. Triple G will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

87. For example, the 2024 Rule threatens to upend Triple G's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Triple G relies on out of business, or into different lines of business other than Triple G's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered.

## **CLAIMS FOR RELIEF**

**Count One**
**5 U.S.C. § 706(2)(A)**
**Arbitrary and Capricious**

88. Plaintiffs incorporate the preceding paragraphs by reference.

89. The 2024 Rule must be set aside, as it is "not in accordance with law."

90. Untethered to any existing law, the 2024 Rule significantly departs from the more faithful and measured application of existing Supreme Court and Fifth Circuit precedent embodied in the 2021 Rule and prior to its promulgation.

91. The 2024 Rule abandons the key factors most probative of employee status and classification, opting for an open-ended inquiry expressly designed to be vague and amorphous to tilt the balance against companies and employers like Plaintiffs, who rely on outside independent contractors as a core part of their businesses.

92. The 2024 Rule rejects the economic reality that independent owner-operator truckers are often integral to delivering certain cargo to Plaintiffs' customers on an agreed-upon and specified route—like the example of a delivery driver delivering flowers for the florist—without being integrated into Plaintiffs' day-to-day business operations.

93. As the 2021 Rule and Fifth Circuit precedent explain, the use of the two core factors provides better guidance as to the economic realities of the relationship between workers and companies such as Plaintiffs' trucking operations, including their relationship with their owner-operator independent trucking contractors.

94. In promulgating the new 2024 Rule and rescinding the 2021 Rule, the Defendants failed to consider alternatives within the existing ambit of the 2021 Rule—like monitoring its effects—claiming they are not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule."

95. Moreover, although Defendants acknowledge they are "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding the 2021 Rule, they then contradict themselves by summarily and implausibly rejecting employers' reliance interests on the 2021 Rule—like Plaintiffs' reliance interests here—as "unpersuasive."

18

96. Thus, the 2024 Rule must be set aside because it is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law and is, therefore, invalid under 5 U.S.C. § 706(2)(A).

### Count Two
### 5 U.S.C. § 706(2)(C)
### In Excess of Statutory Authority

97. Plaintiffs incorporate the preceding paragraphs by reference.

98. Courts set aside agency action where it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

99. The 2024 Rule is not supported by the text of the FLSA, binding court precedent, or ordinary interpretative principles.

100. The 2024 Rule is vague and amorphous and provides no useful guidance to regulated parties such as Plaintiffs.

101. The 2024 Rule's interpretation of the FLSA—particularly its nonexclusive six-factor "totality of the circumstances" test—is inconsistent with the original meaning of the statute as Congress intended.

102. Thus, the 2024 Rule must be set aside because it exceeds the DOL's statutory authority and is, therefore, invalid.

### <u>PRAYER FOR RELIEF</u>

Plaintiffs respectfully request that the Court grant them relief as follows:

A.     Preliminarily and permanently enjoin Defendants from enforcing the 2024 Rule, which becomes effective on March 11, 2024, pursuant to 5 U.S.C. § 705 and § 706(2);

B.      Declare the 2024 Rule unlawful and set it aside pursuant to 5 U.S.C. § 706(2) and 28 U.S.C. § 2202;

C.      Award attorneys' fees and costs to Plaintiffs as prevailing parties pursuant to 28 U.S.C. § 2412; and

D.      Award Plaintiffs relief that the Court deems just, proper, or equitable.

Dated:  March 7, 2024

/s/ James Baehr
James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org

M.E. Buck Dougherty III* TN BPR #022474
*Trial Attorney* designation LR 11.2
Reilly Stephens*
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
Telephone: (312) 637-2280
bdougherty@libertyjusticecenter.org
rstephens@libertyjusticecenter.org
*\* Pro hac vice admission to be sought by
  visiting attorneys pursuant to LR 83.2.5*

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 7, 2024, I electronically filed the foregoing document through the Court's ECF system. Moreover, although Defendants' counsel have yet to file notices of appearance in this case, I further served the foregoing document upon counsel with the United States Department of Justice on March 7, 2024, via electronic mail, as follows:


Lisa Olson, Esq.
U.S. Department of Justice, Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-514-5633
Fax: 202-616-8460
E-Mail: lisa.olson@usdoj.gov


Alexis Echols, Esq.
U.S. Department of Justice
110 L Street, NW
Washington, D.C. 20005
Telephone: 202-305-8613
Fax: 202-616-8470
E-Mail: alexis.j.echols@usdoj.gov



/s/ James Baehr