# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, <br><br> Defendants. | **Case No. 2:24-cv-00347** <br><br> Section L <br><br> District Judge Fallon <br><br> Magistrate Judge North |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 475-8407

M.E. Buck Dougherty III TN BPR #022474
Reilly Stephens
LIBERTY JUSTICE CENTER
440 N. Wells Street, Suite 200
Chicago, Illinois 60654
Telephone: (312) 637-2280

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................... 5

STATEMENT OF FACTS ...................................................................... 6

  A. DOL's 2021 Rule ........................................................................ 6

  B. DOL's 2024 Rule ........................................................................ 7

  C. Plaintiffs and Their Injuries ................................................... 8

LEGAL STANDARD ............................................................................ 14

ARGUMENT ........................................................................................ 15

  I. This Court should issue a Preliminary Injunction and set aside the 2024 Rule. ....................................................................................... 15

    A. Plaintiffs are likely to succeed on the merits of their claims because DOL promulgated the 2024 Rule in violation of the Administrative Procedure Act. .................................................... 16

      1. The 2024 Rule is arbitrary and capricious. ........................... 18

        a. DOL failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming it is not "obligated to wait for more time to gather data before rescinding" it. ........................................................................ 19

        b. DOL failed to consider employers' reliance interests on 2021 Rule. ................................................................................ 22

      2. The 2024 Rule is in excess of DOL's statutory authority. ...... 23

    B. Plaintiffs would be irreparably harmed absent a Preliminary Injunction. .................................................................................... 24

    C. The balance of equities favors issuing a Preliminary Injunction. ............. 24

  II. The Court may also grant similar equitable relief pursuant to 5 U.S.C. § 706(2)(A). ......................................................................... 25

CONCLUSION ..................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*10 Ring Precision, Inc. v. Jones*, 722 F.3d 711 (5th Cir. 2013) .................................. 18

*Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021) ........ 24

*Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019).................................................... 16

*Byrum v. Landreth*, 566 F.3d 442 (5th Cir. 2009). .................................................... 15

*Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983)...................................................... 6, 22

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)............... 17

*Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130,
    2022 U.S. Dist. LEXIS 68401 (E.D. Tex. Mar. 14, 2022)........................................ 7

*DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) .................... 16, 19, 21, 23

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016).......................................... 17

*Env't Integrity Project v. EPA*, 425 F.3d 992 (D.C. Cir. 2005) .................................. 16

*Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ......... 17

*Fed. Commc'ns Comm'n v. Prometheus Radio Project, U.S.*,
    141 S. Ct. 1150 (2021). ............................................................................................ 18

*Gregory v. Miller*, Civil Action No. 04-3017, 2007 U.S. Dist. LEXIS 19974
    (E.D. La. Mar. 21, 2007)............................................................................................ 15

*Janvey v. Alguire*, 647 F.3d 585 (5th Cir. 2011) ...................................................... 15

*Michigan v. EPA*, 576 U.S. 743 (2015)........................................................... 17, 21, 23

*Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023).......................................................... 15

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................................... 16

*Nat'l. Cable & Telecomms. Ass'n. v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) .................................................................................................. 17

*Nken v. Holder*, 556 U.S. 418 (2009) ........................................................................ 15

*NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85 (1995)......................................... 23

*R.J. Reynolds Vapor Co. v. FDA,* 65 F.4th 182 (5th Cir. 2023) ................................. 16

*Sierra Club v. U.S. Envtl. Prot. Agency*, 939 F.3d 649 (5th Cir. 2019) ............... 18, 20

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) ........................................................ 24

*Texas v. Biden*, 20 F.4th 928, 988 (5th Cir. 2021) ................................................ 18

*Texas v. EPA*, 829 F.3d 405 (5th Cir. 2016) ......................................................... 24

*United States v. Silk*, 331 U.S. 704, 713 (1947) ....................................................... 6

*Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427 (2014) .................................... 23

*Wages & White Lion Invs. v. United States Food and Drug Admin.*,
    16 F.4th 1130 (5th Cir. 2021) .................................................................. 24

**Statutes**

5 U.S.C. § 702 ........................................................................................................ 16

5 U.S.C. § 704 ........................................................................................................ 16

5 U.S.C. § 705 ........................................................................................................ 25

5 U.S.C. § 706 ........................................................................................................ 18

**Rules**

Fed. R. Civ. P. 65 ..................................................................................................... 5

LR 5.2 ....................................................................................................................... 5

**Other Authorities**

86 FR 1168 ................................................................................................... 6, 20, 22

89 FR 1638 .............................................................................................................. passim

## INTRODUCTION

Plaintiffs submit this Memorandum of Law in support of their Motion for Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. They seek to set aside the U.S. Department of Labor's new independent contractor classification rule—"Employee or Independent Contractor Classification Under the Fair Labor Standards Act," which takes effect on March 11, 2024.[1] *See* 89 FR 1638.

The Plaintiffs are four Louisiana-based businesses in the trucking industry and one organization that advocates for them in Baton Rouge and Washington, D.C. on laws and regulations that affect the industry. Plaintiffs rely on independent owner-operator trucking labor as a core component of their businesses. The rule the Plaintiffs challenge rescinds a 2021 Rule that they have relied on for three years when classifying their independent-contracting labor. But the 2024 Rule, unlike the lawful 2021 Rule, was promulgated in violation of the Administrative Procedure Act. As a result of the 2024 Rule, Plaintiffs will incur substantial financial injury with no guarantee of eventual recovery unless the Court sets it aside.

*First*, the 2024 Rule is arbitrary and capricious. Defendants failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming they are not "obligated to wait for more time to gather data before rescinding" it. And they failed to consider employers' reliance interests on the 2021 Rule.

---

[1] Plaintiffs have also filed an Emergency Motion for Temporary Restraining Order today to postpone the effective date of the 2024 Rule. *See* ECF No. 14.

*Second*, the 2024 Rule is in excess of the Defendants' statutory authority under the Fair Labor Standards Act.

## STATEMENT OF FACTS

### A. DOL's 2021 Rule

In January 2021, the U.S. Department of Labor and its Wage and Hour Division (collectively the "DOL") issued a classification rule establishing when a worker qualifies as either an employee or independent contractor. *See* 86 FR 1168. The 2021 Rule reconciled decades of inconsistency and set forth a formal interpretation of the traditional standards established in *United States v. Silk*, 331 U.S. 704 (1947), to provide clarity to employers when classifying employees and independent contractors. *See* First Amended Complaint ("Am. Compl."), ECF No. 9 at ¶ 30.

Specifically, the 2021 Rule found, similarly to the Fifth Circuit Court of Appeals in *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983), that in practice two factors in particular predominate in determining whether a person should be considered an employee or an independent contractor: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss. ECF No. 9 at ¶ 31. And under the 2021 Rule, if these two key factors give a clear answer, that is the end of the analysis. *Id*. at ¶ 32. And if the two key two factors point in disparate directions, then there are three additional factors for a court to consider: (3) the amount of skill required for the work; (4) the degree of permanence of the working relationship; and (5) whether the work is part of an integrated unit of production. *Id*. at ¶ 33.

A district court held that the 2021 Rule "became effective as of March 8, 2021, the rule's original effective date, and remains in effect." *See Coal. for Workforce Innovation v. Walsh*, No. 1:21-CV-130, 2022 U.S. Dist. LEXIS 68401, *49 (E.D. Tex. Mar. 14, 2022).

## B. DOL's 2024 Rule

On January 10, 2024, the DOL issued and published in the Federal Register a new final rule, effective March 11, 2024, which rescinds the 2021 Rule and provides yet another interpretation of the distinction between employees and independent contractors under the Fair Labor Standards Act ("FLSA"). *See* 89 FR 1638-39.

The 2024 Rule provides a "totality of the circumstances" analysis, invoking six nonexclusive factors that a court could look to when determining employee status: (1) workers' opportunity for profit or loss depending on managerial skill; (2) investments made by worker and employer; (3) degree of permanence of the work relationship; (4) nature and degree of businesses' control over the worker; (5) the extent to which work performed is an integral part of the potential employer's business; and (6) whether the worker uses specialized skills in performing the work. *Id*. at 1640.

In promulgating the 2024 Rule, the DOL stated that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." *Id*. at 1660. The DOL further acknowledged that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding and replacing the 2021 Rule. *Id*. But then it said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." *Id*.

## C.  Plaintiffs and Their Injuries

*Frisard's Transportation, L.L.C.*

Since 2014, Plaintiff Frisard's Transportation, L.L.C. ("Frisard's") has been a family-owned trucking company specializing in transporting finished goods to stock the shelves of supermarkets and other retail stores, among other cargo, that relies on independent contracting labor as a core necessity of its business. *See* Cully Frisard Declaration ("Frisard Decl."), ECF No. 14-1 at ¶ 3.

Frisard's is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule. *Id*. at ¶ 4. Frisard's has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent-contracting labor. *Id*. Frisard's has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill Frisard's clients' needs. *Id*. at ¶ 5.

Frisard's transports cargo throughout the southern and eastern United States, from Texas and Nebraska to Maryland and Florida, wherever its customers need cargo delivered. *Id*. at ¶ 6. Frisard's contracts with more than thirty owner-operated independent drivers who own their own trucks, decide which loads to carry or not, and who are paid a flat percentage of shipping fee for a given load, plus reimbursable expenses such as fuel which are passed on to the client. *Id*. at ¶ 7.

Frisard's utilizes only independent owner operators to make deliveries and employs no in-house drivers. *Id*. at ¶ 8. By contrast, a related but separate company, Frisard's Trucking Co., employes a staff of in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a

benefits package, and are required to work set hours and carry loads as assigned. *Id*. Frisard's use of independent owner-operators is beneficial to both Frisard's itself, which is able to operate more efficiently and reduce excess costs, and to Frisard's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id*. at ¶ 9.

Frisard's will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id*. at ¶ 10. For example, the 2024 Rule threatens to upend Frisard's business operations, increasing costs, depriving truckers of the opportunity to operate independently within their own business, and potentially driving many of the independent contractors Frisard's relies on out of business, or into different lines of business other than Frisard's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. *Id*. at ¶ 11.

*Louisiana Motor Transport Association, Incorporated*

Plaintiff Louisiana Motor Transport Association, Incorporated ("LMTA") is a non-profit corporation founded in 1939, and it represents 388 Louisiana trucking and related industry companies. *See* Renee Amar Declaration ("Amar Decl."), ECF No. 14-2 at ¶ 3. LMTA's mission is to protect and promote Louisiana's trucking industry. *Id*. at ¶ 4. Its members include every type of motor carrier in Louisiana, including related and exempt, intrastate and interstate, and for-hire and private. *Id*. LMTA champions the trucking industry and advocates for its members on laws and regulations in Baton Rouge, La., and in Washington, D.C. *Id*. at ¶ 5.

LMTA's members are subject to the FLSA, the 2021 Rule, and the 2024 Rule, and they rely on independent contracting labor as a core necessity of their businesses. *Id.* at ¶ 6. Moreover, LMTA's members have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent-contracting labor. *Id.* at ¶ 7. LMTA's members' use of independent owner-operators benefits both employer members, who are able to operate more efficiently and reduce excess costs, and to members' independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id.* at ¶ 8.

LMTA's members will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id.* at ¶ 9. For example, the 2024 Rule threatens to upend LMTA's employer members' business operations, increase costs, and deprive independent owner-operator truckers of the opportunity to work independently within their own business. *Id.* at ¶ 10. Moreover, the 2024 Rule could potentially drive many of the independent contractors LMTA's employer members rely on out of business, or into different lines of business other than LMTA's members' businesses, depriving them of needed manpower to deliver cargo wherever their clients need it delivered. *Id.* at ¶ 11.

*A & B Group, Inc.*

Plaintiff A & B Group, Inc. ("A&B") is a trucking company in operation since 1995, specializing in delivering liquid and dry bulk long-haul services and

transporting cargo to all 50 U.S. states and Canada. *See* Burton Baty Declaration ("Baty Decl."), ECF No. 14-3 at ¶ 3.

A&B is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. *Id*. at ¶ 4. A&B has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. *Id*. at ¶ 5. A&B has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. *Id*. at ¶ 6.

A&B contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. *Id*. at ¶ 7. A&B also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. *Id*. at ¶ 8. A&B's use of independent owner-operators is beneficial to both A&B itself, which is able to operate more efficiently and reduce excess costs, and to A&B's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id*. at ¶ 9.

A&B will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id*. at ¶ 10. For example, the 2024 Rule threatens to upend A&B's business operations, increasing costs, depriving truckers of the

opportunity to work independently within their own business, and potentially driving many of the contractors A&B relies on out of business, or into different lines of business other than A&B's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. *Id*. at ¶ 11.

*Northlake Moving and Storage, Inc.*

Plaintiff Northlake Moving and Storage, Inc. ("Northlake") is a trucking company that has operated for over 40 years, specializing in transportation and storage of household goods, office furniture, and special products, and it transports cargo to 48 U.S states. *See* Larry Terrell Declaration ("Terrell Decl."), ECF No. 14-4 at ¶ 3.

Northlake is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. *Id*. at ¶ 4. Northlake has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. *Id*. at ¶ 5. Northlake has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. *Id*. at ¶ 6.

Northlake contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. *Id*. at ¶ 7. Northlake also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. *Id*. at ¶ 8. Northlake's use of independent owner-operators is beneficial to

both Northlake itself, which is able to operate more efficiently and reduce excess costs, and to Northlake's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id*. at ¶ 9.

Northlake will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id*. at ¶ 10. For example, the 2024 Rule threatens to upend Northlake's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Northlake relies on out of business, or into different lines of business other than Northlake's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. *Id*. at ¶ 11.

*Triple G. Express, Inc.*

Triple G. Express, Inc. ("Triple G") is a family-owned trucking company that has operated since 1985 and is an intermodal carrier serving the Port of New Orleans Markets. *See* Randy Guillot Declaration ("Guillot Decl."), ECF No. 14-5 at ¶ 3.

Triple G transports cargo throughout the Southeastern United States, including Louisiana, Texas, Mississippi, and Alabama, wherever their clients and customers need cargo delivered. *Id*. at ¶ 4. Triple G is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. *Id*. at ¶ 5. Triple G has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. *Id*. at ¶ 6. Triple G has gross sales of more than $500,000 per year, frequently

hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. *Id*. at ¶ 7.

Triple G contracts with 100 independent drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. *Id*. at ¶ 8. Triple G utilizes only independent owner-operators to make deliveries and employs no in-house drivers. *Id*. at ¶ 9. Triple G's use of independent owner-operators is beneficial to both Triple G's itself, which is able to operate more efficiently and reduce excess costs, and to Triple G's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. *Id*. at ¶ 10.

Triple G will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. *Id*. at ¶ 11. For example, the 2024 Rule threatens to upend Triple G's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Triple G relies on out of business, or into different lines of business other than Triple G's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. *Id*. at ¶ 12.

## LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure  governs a court's issuance of injunctive relief, including a temporary restraining order and preliminary injunction. The legal standard for issuance of a temporary restraining order and for a

preliminary injunction are the same. *See Gregory v. Miller*, Civil Action No. 04-3017, 2007 U.S. Dist. LEXIS 19974, *2 (E.D. La. Mar. 21, 2007) (Engelhardt, J.). Rule 65 is designed to protect the status quo of the parties pending trial. *See Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (holding that "where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction").

To obtain a preliminary injunction, the moving party must satisfy four factors: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). "The government's and the public's interests merge when the government is a party." *Mock v. Garland*, 75 F.4th 563, 577 (5th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## ARGUMENT

### I. This Court should issue a Preliminary Injunction and set aside the 2024 Rule.

This Court should grant Plaintiffs' Motion and issue a Preliminary Injunction and set aside the 2024 Rule.

A Preliminary Injunction is warranted here because Plaintiffs are likely to succeed on the merits of their Administrative Procedure Act claims; they will suffer irreparable harm by incurring substantial financial injury with no guarantee of

eventual recovery as a result of the 2024 Rule; and the balance of equities favors issuing a Preliminary Injunction.

### A. Plaintiffs are likely to succeed on the merits of their claims because DOL promulgated the 2024 Rule in violation of the Administrative Procedure Act.

Under the first factor, Plaintiffs are likely to succeed on the merits of their claims because DOL promulgated the 2024 Rule in violation of the Administrative Procedure Act.

In accordance with the Administrative Procedure Act ("APA"), a person wronged by federal agency action "is entitled to judicial review thereof." 5 U.S.C. § 702. The APA further allows judicial review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. When faced with an APA claim, an "agency must defend its actions based on the reasons it gave when it acted," and may not engage in post hoc rationalizations. *DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020).

Specifically, where, as here, "an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *Id.* at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)). When changing course, an agency must account for "serious reliance interests" its "longstanding policies may have engendered." *Regents,* 140 S. Ct. at 1913. Indeed, such a policy change is colloquially known as the "surprise switcheroo" doctrine. *R.J. Reynolds Vapor Co. v. FDA,* 65 F.4th 182, 189, n. 6 (5th Cir. 2023) (citing *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019); *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005)). And failure to

consider "relevant factors" will render "an agency's decreed result" unlawful. *Michigan v. EPA*, 576 U.S. 743, 750 (2015). These requirements ensure that an agency has engaged in "reasoned decisionmaking." *Id.*

To be sure, agencies are "free to change their existing policies," as long as "they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing *Nat'l. Cable & Telecomms. Ass'n. v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005)); *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). But the agency must "show that there are good reasons for the new policy." *Encino Motorcars, LLC*, 579 U.S. at 222 (citing *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

Here, it is undisputed that the DOL's new 2024 Rule constitutes final agency action. *See generally* 89 FR 1638. It is further undisputed that the 2024 Rule rescinds and replaces the 2021 Rule. *Id.* at 1639. Moreover, it is undisputed that the 2021 Rule has been in effect for three years and remains in effect until March 11, 2024, absent a TRO from this Court. Indeed, a district court within the Fifth Circuit previously rejected DOL's first attempt to rescind the 2021 Rule and held that it "became effective as of March 8, 2021, the rule's original effective date, and remains in effect." *See Coal. for Workforce Innovation*, 2022 U.S. Dist. LEXIS at *49.

And like the DOL's first botched attempt to rescind the 2021 Rule, its latest misguided scheme to rescind it by promulgating the 2024 Rule must also fail. As further discussed below, the Defendants violated the APA in promulgating the 2024 Rule, and it is arbitrary and capricious and in excess of DOL's statutory authority.

### 1. The 2024 Rule is arbitrary and capricious.

As alleged in Count I of Plaintiffs' First Amended Complaint, DOL's 2024 Rule is arbitrary and capricious and violates the APA. *See* Am. Compl., ECF No. 9.

The APA forbids an agency from acting in an arbitrary and capricious manner in promulgating rules. *See* 5 U.S.C. § 706(2)(A). If an agency action is arbitrary and capricious, the court must hold that action to be unlawful and set it aside. *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021) (quoting 5 U.S.C. § 706(2)(A)). "The APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Fed. Commc'ns Comm'n v. Prometheus Radio Project, U.S.*, 141 S. Ct. 1150 (2021).

Agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc.*, 463 U.S. at 43 (cleaned up). A court must "ensure that the agency 'examined the relevant data and articulated a satisfactory explanation for its action.'" *Sierra Club v. U.S. Envtl. Prot. Agency*, 939 F.3d 649, 664 (5th Cir. 2019) (quoting *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013)).

It is fatal to an agency's new policy when it fails to contemplate alternatives within the ambit of the existing policy because an agency thus fails to "consider important aspects of the problem before [it]," and this "omission alone causes agency

18

action to be arbitrary and capricious." *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.  Moreover, while considering alternatives, an agency is further required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents*, 140 S. Ct. at 1915. DOL entirely failed to meet these standards.

First, DOL failed to consider alternatives within the ambit of the existing 2021 Rule, such as monitoring its effects upon regulated stakeholders like Plaintiffs, from the time it took effect three years ago. Second, DOL failed to adequately consider employers' reliance interests on the 2021 Rule—like Plaintiffs' reliance on it since March 8, 2021, when classifying their independent contracting labor.

### a. DOL failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming it is not "obligated to wait for more time to gather data before rescinding" it.

In promulgating the 2024 Rule, DOL failed to consider alternatives within the ambit of the existing 2021 Rule, like monitoring its effects, claiming in a haphazard and dismissive fashion that it is not "obligated to wait for more time to gather data before rescinding" it.

Again, when "an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *Regents*, 140 S. Ct. at 1913. But DOL stated in the 2024 Rule that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." 89 FR at 1660. In other words, according to the DOL's rudimentary and unsophisticated analysis devoid of reasoning, it apparently does not have to review

*any data* when it promulgates a new rule such as the 2024 Rule and rescinds an old rule like the 2021 Rule. And the 2021 Rule has been in effect for *three years* so it is not like DOL had to "wait" to gather such data. The data is available. Instead, the DOL believes it can simply take a sledgehammer to the 2021 Rule and start over from scratch. Even though courts must "ensure that the agency '*examined the relevant data* and articulated a satisfactory explanation for its action.'" *Sierra Club*, 939 F.3d at 664 (emphasis added).

Why would any reasonable federal agency not review data from the effects of a rule—like the 2021 Rule—that had been in effect for three years? It is inexplicable. And no reasonable agency would make such a glaring omission when rescinding a rule as important and significant as one establishing how businesses must classify workers. DOL promulgated the 2021 Rule "to promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." 86 FR at 1168. Consider the data DOL could have reasonably monitored with minimal effort to determine if the 2021 Rule achieved its purpose: questionnaires sent to stakeholders to conduct a survey on whether the 2021 Rule promoted certainty as it claimed; an analysis of court filings and relevant litigation both before and after promulgation of the 2021 Rule to determine if it reduced litigation; and an assessment on the number of workers being classified as employees versus independent contractors and the relevant impact on the economy and innovation.

But DOL—without gathering and reviewing any relevant data—decided to reverse course and eliminate certainty for stakeholders like the Plaintiffs, and said,

the "[2024 Rule] (and particularly rescission of the 2021 IC Rule) is needed in part because of the concern that the 2021 IC Rule's new analysis and concepts did not provide the intended clarity." 89 FR at 1654. But how plausible is the "concern" when an agency buries its head in the sand and refuses to examine relevant data?

Instead, the 2024 Rule actually reveals DOL's failure to review data on the effects of the 2021 Rule before rescinding it, which means the DOL failed to "consider important aspects of the problem before [it]," and this "omission alone causes agency action to be arbitrary and capricious." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43. Moreover, DOL's explanation for its decision that it was not obligated to monitor data on the effects of the 2021 Rule before rescinding it "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See id*. Additionally, its failure to consider "relevant factors" like data on the 2021 Rule before rescinding it renders the 2024 Rule unlawful because DOL did not engage in "reasoned decisionmaking." *See Michigan*, 576 U.S. at 750.

And while DOL claimed to have "considered four alternatives to what it proposed" (89 FR at 1660), a closer look reveals that it did not consider an alternative "within the existing ambit" of the 2021 Rule. *See Regents*, 140 S. Ct. at 1913. The DOL noted that it had previously considered and rejected two of those alternatives—issuing guidance adopting either the common law test or the ABC test[2] for

---

[2] The ABC test is weighted in favor of classifying a worker as an employee, not an independent contractor. Under the ABC test, a worker is considered an employee and not an independent contractor, unless the hiring entity satisfies three conditions. *See* https://www.labor.ca.gov/employmentstatus/abctest/.

determining FLSA employee or independent contractor status—in the 2021 IC Rule. 89 FR at 1660. But those are not alternatives within the existing ambit of the 2021 Rule because the common law test and ABC test were not part of the 2021 Rule. *See* 86 FR 1168. Instead, the 2021 Rule adopted the Fifth Circuit's *Castillo* opinion, under which two factors in particular predominate: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss. *See generally Castillo*, 704 F.2d 181. Thus, the first two "alternatives" that DOL claimed it considered were not within the existing ambit of the 2021 Rule itself.

DOL's third "alternative" was "to only partially rescind the 2021 IC Rule." 89 FR at 1661. This is also not an alternative within the existing ambit of the 2021 Rule, given that DOL conceded it did not actually monitor any data on the effects of the 2021 Rule. And DOL's fourth proposed "alternative"—rescinding the 2021 Rule entirely to provide "guidance"—is nonsensical and clearly not an alternative within the existing ambit of the 2021 Rule. 89 FR at 1661.

### b. DOL failed to consider employers' reliance interests on 2021 Rule.

DOL failed to consider employers' reliance interests on 2021 Rule. And the Declarations show that Plaintiffs have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent contracting trucking labor.

Although DOL acknowledged that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding the 2021 Rule, it then summarily dismissed that impact and said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." 89 FR at 1660.

But an agency is required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns, which DOL failed to do. *See Regents*, 140 S. Ct. at 1915.

Even assuming arguendo that DOL assessed employer reliance interests from this statement above, the 2024 Rule reflects that it failed to determine whether employer reliance interests were significant. And it did not weigh employer reliance interests against competing policy concerns in the 2024 Rule. This is not "reasoned decisionmaking." *See Michigan*, 576 U.S. at 750. And concluding employer reliance interest on the 2021 Rule is "unpersuasive" without reviewing any relevant data "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43.

### 2.  The 2024 Rule is in excess of DOL's statutory authority.

As alleged in Count II of Plaintiff's First Amended Complaint, DOL's 2024 Rule is in excess of its statutory authority. *See* Am. Compl., ECF No. 9.

Any regulation that is promulgated must withstand APA review to ensure it is not arbitrary, capricious, contrary to law, or in excess of statutory authority. *See* 5 U.S.C. § 706(2)(A). The Supreme Court has warned that, when an agency significantly departs from precedent in excess of its authority when interpreting a particular statute, "its interpretation [is] unreasonable." *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 94 (1995). Moreover, since it has taken DOL over eighty years since the FLSA's enactment to "discover" its novel six-factor "totality of the circumstances" patchwork that is the 2024 Rule, further highlights the Rule's unreasonableness. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014).

### B. Plaintiffs would be irreparably harmed absent a Preliminary Injunction.

Under the second factor, Plaintiffs would be irreparably harmed absent a Preliminary Injunction. They will incur substantial financial injury with no guarantee of eventual recovery, and Defendants' sovereign immunity bars recovering costs.

"[S]ubstantial financial injury" may be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489, 210 L. Ed. 2d 856 (2021). Further, "complying with a regulation later held invalid almost always produces irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433. Moreover, Defendants' sovereign immunity bars Plaintiffs' ability to recover costs. *See Wages & White Lion Invs. v. United States Food and Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021).

### C. The balance of equities favors issuing a Preliminary Injunction.

Under the merged third and fourth factors because the government is the defendant, the balance of equities favors issuing a Preliminary Injunction since DOL violated the APA when it promulgated the 2024 Rule.

It is of the highest public importance that federal agencies follow the law. *See Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (per curiam). "[O]ur system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Alabama Ass'n of Realtors*, 141 S. Ct. at 2490.

## II. The Court may also grant similar equitable relief pursuant to 5 U.S.C. § 706(2)(A).

This Court may also set aside the 2024 Rule based on its inherent equitable powers pursuant to 5 U.S.C. § 706(2)(A), which states a court may "set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

### CONCLUSION

Plaintiffs respectfully request that the Court issue a Preliminary Injunction and **SET ASIDE** the 2024 Rule.

Dated:  March 7, 2024                        Respectfully submitted,

                                             /s/ James Baehr
                                             James Baehr (LSBA 35431)
                                             Sarah Harbison (LSBA 31948)
                                             PELICAN CENTER FOR JUSTICE
                                             PELICAN INSTITUTE FOR PUBLIC POLICY
                                             400 Poydras Street, Suite 900
                                             New Orleans, LA 70130
                                             Telephone: (504) 475-8407
                                             james@pelicaninstitute.org
                                             sarah@pelicaninstitute.org

                                             M.E. Buck Dougherty III* TN BPR #022474
                                             *Trial Attorney* designation LR 11.2
                                             Reilly Stephens*
                                             LIBERTY JUSTICE CENTER
                                             440 N. Wells Street, Suite 200
                                             Chicago, Illinois 60654
                                             Telephone: (312) 637-2280
                                             bdougherty@libertyjusticecenter.org
                                             rstephens@libertyjusticecenter.org
                                             * Pro hac vice admission to be sought by
                                                visiting attorneys pursuant to LR 83.2.5

                                             *Attorneys for Plaintiffs*