1                    UNITED STATES DISTRICT COURT

2                    EASTERN DISTRICT OF LOUISIANA

3

4
    FRISARD'S TRANSPORTATION,        *        24-CV-347
5   LLC, et al.                      *
                                     *
6   versus                           *        Section L
                                     *
7   UNITED STATES DEPARTMENT         *
    OF LABOR, et al.                 *        March 8, 2024
8                                    *
    * * * * * * * * * * * * * * * *

9

10

11              TELEPHONE STATUS CONFERENCE BEFORE
                THE HONORABLE ELDON E. FALLON
                UNITED STATES DISTRICT JUDGE
12

13  Appearances:

14

15  For the Plaintiffs:          Liberty Justice Center
                                 BY:  M.E. BUCK DOUGHERTY III, ESQ.
16                                    REILLY STEPHENS, ESQ.
                                 440 Wells Street, Suite 200
17                               Chicago, Illinois 60654

18  For the Defendants:          U.S. Attorney's Office
                                 BY:  PETER MANSFIELD, ESQ.
19                                    RENEE GOUDEAU, ESQ.
                                 650 Poydras Street, Suite 1600
20                               New Orleans, Louisiana 70130

21
    For the Defendants:          U.S. Department of Justice
22                               BY:  LISA A. OLSON, ESQ.
                                 20 Massachusetts Avenue NW
23                               Washington, DC 20530

24

25

1   Official Court Reporter:          Toni Doyle Tusa, CCR, FCRR
                                      500 Poydras Street, Room B-275
2                                     New Orleans, Louisiana 70130
                                      (504) 589-7778
3

4

5   Proceedings recorded by mechanical stenography using
    computer-aided transcription software.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

10:28

## <u>PROCEEDINGS</u>

### (March 8, 2024)

THE COURT:  Good morning everyone.  This is Judge Fallon.

Who is on the line for the plaintiffs?

MR. STEPHENS:  This is Reilly Stephens, Your Honor, on the line for the plaintiffs.

THE COURT:  And for the defendants?

MS. OLSON:  Your Honor, this is Lisa Olson with the Department of Justice.

Peter, I will allow you to introduce yourself.

MR. MANSFIELD:  Thanks, Lisa.

Peter Mansfield and Renee Goudeau, U.S. Attorney's Office, Eastern District of Louisiana.

THE COURT:  The plaintiffs are four Louisiana-based businesses in the trucking industry and one organization that advocates for them in Baton Rouge as well as Washington.

The plaintiffs in this case have moved the Court for a temporary restraining order or a preliminary injunction to postpone the effective date of the United States Department of Labor's new independent contractor classification rule, "Employee or Independent Contractor Classification under the Fair Labor Standards Act."

Let me hear from the parties at this time, from the plaintiffs first.  Why do you want that, sir?

10:35

1          **MR. STEPHENS:**  Yes.  Sure, Your Honor.  We filed our

2     motion, and I think that we have said most of what we would

3     have to say in the papers.  I think the emphasis is that this

4     is a major national rule that is having a negative effect on my

5     clients.  So we would ask the Court provide relief from this

6     major regulatory change while the case proceeds ahead of the

7     effective date of March 11.

8          **MR. DOUGHERTY:**  Your Honor, this is Buck Dougherty,

9     attorney with the Liberty Justice Center.  That was my

10    colleague, Reilly Stephens.

11         **MR. STEPHENS:**  Mr. Dougherty will take the lead here.

12    I wasn't sure if he was going to be able to make the hearing.

13         **MR. DOUGHERTY:**  I apologize.  I just got the notice,

14    Your Honor.  I am still waiting to get my certificate of good

15    standing from Tennessee, but we are on the pleadings.  I will

16    be filing that *pro hac* information soon.

17              As Mr. Stephens said, the new 2024 rule goes

18    into effect Monday, March 11, and so the emergency temporary

19    restraining order is being filed to postpone the effective date

20    of the rule.  As Mr. Stephens said, the declarations kind of

21    speak for themselves.  Our clients will be injured

22    financially -- substantially -- with no guarantee of

23    recovering.  We believe the case law and the controlling

24    precedent in the Fifth Circuit shows that there's irreparable

25    harm.  Certainly the 2021 rule is the status quo, and we are

10:37

1    simply seeking to preserve that status quo under Rule 65, to

2    maintain that rule, the 2021 rule, the old rule.

3              Certainly we filed a motion for preliminary

4    injunction, noticed that for March 27.  We would ask that the

5    restraining order be in effect until the Court makes its

6    decision and determination on the preliminary injunction.  We

7    believe the facts as set forth in the declaration and the rule,

8    the new rule, the DOL acted arbitrarily and capriciously by not

9    collecting data, monitoring data on the 2021 rule, which has

10   been in effect for three years.  Based on this information,

11   Your Honor, and the record before the Court, we believe that

12   preserving the status quo and entering the TRO is warranted in

13   this situation.

14             **THE COURT:**  Usually in these situations the

15   government posts their intentions.  They have hearings and a

16   back-and-forth.  They get information from the public or

17   interested parties, and there's an opportunity at that level to

18   focus more attention on it.  What happened in this case?

19             **MR. DOUGHERTY:**  That's right, Your Honor.  There was

20   notice and comment.  The rule itself, 2024, the new rule, I

21   believe referenced over 55,000 comments, so a number of

22   comments were received.  Some were positive; some were

23   negative.

24             In terms of the Administrative Procedure Act,

25   certainly an agency can change course and policies if it wants

10:38

1    to; but when it does it in those situations, it has to be a

2    reasoned decision-making.  We don't believe that was the case

3    here, and so this is a final rule.  It was published in the

4    *Federal Register* January 10, 2024.  We filed suit.  Of course,

5    Frisard's was the first plaintiff, and we have added four

6    additional parties as of yesterday.

7              It is a final rule.  It goes into effect on

8    March 11, and we don't believe that the agency acted reasonably

9    by completely disregarding -- and they said this, that we cite

10   in the memorandum of law, they did not review any kind of data

11   on the 2021 rule and its effect, and they believed they didn't

12   have to review any data.  Our position is that's wrong, and

13   there must be some type of reasoned analysis if an agency is

14   going to change policy.

15             So the 2021 rule, still in effect, there was

16   prior litigation, Your Honor, and of course we cite that.  It

17   was in the Eastern District of Texas where they tried to

18   withdraw the rule, the old rule, but that was just according --

19   Texas said they couldn't do that.  It was a final judgment, so

20   the rule has been in effect for three years.

21             In accordance with the declarations that we

22   filed, our clients have relied on that 2021 rule for

23   three years in terms of how they classify their workers,

24   independent contractors versus employees.  So completely

25   changing course and not factoring in the reliance interests --

10:40

1  you know, our clients certainly have relied on that for

2  three years now.  That is going to completely upend their

3  business operations.  The APA statute that we cite to, as well,

4  also provides relief for postponing a rule from going into

5  effect.

6        So Your Honor is correct there was notice and

7  comment.  We don't allege that that was a defect in the new

8  rule, and it generated over 55,000 comments according to the

9  rule.  It was still arbitrary and capricious that they did not

10 actually look at the old rule before rescinding it with this

11 new rule, and so that would be the basis for the relief.

12        **THE COURT:**  Let me hear from the government at this

13 time.

14        **MS. OLSON:**  Thank you, Your Honor.  Lisa Olson here.

15 I would like to put this, first of all, into context.

16        Since the 1940s -- well, let me first start out

17 this rule, this 2024 rule that's being challenged in this case,

18 is simply the embodiment of judicial precedent that has existed

19 for the last 70 years since the Supreme Court issued a series

20 of cases in the 1940s setting forth the analysis that should be

21 used to determine whether a worker is an employee or an

22 independent contractor.  Employees are entitled to certain

23 benefits, minimum wage and overtime under the Fair Labor

24 Standards Act.

25        Since the 1940s and until the present, the

10:42

1    Supreme Court and the Fifth Circuit have adopted, endorsed, and
2    exercised the analysis that is now formally embodied in the
3    2024 rule.  In 2021, at the end of the last administration, the
4    rule was changed to place an emphasis on certain factors which
5    altered this judicially established analysis, and that rule
6    went into effect for three years.  Now the rule is being
7    changed to reinstate what was in effect before 2021 for the
8    prior 70 years.
9              As we said in our response, a notice of proposed
10   rulemaking was issued in October 2022.  The proposed rule was
11   published in October 2023.  So the plaintiffs would have been
12   aware of the potential for this rule for years and certainly
13   months.  The rule was finally published in January, on
14   January 10, 2024, so they then had 61 days to challenge this
15   2024 rule.
16             As you know, they filed their complaint last
17   night.  I was notified by them two weeks ago that they intended
18   to seek a preliminary injunction.  I asked them the next
19   morning when they, roughly, intended to seek it, and I heard
20   nothing back until yesterday at about 5:30 p.m. or late
21   afternoon, when we got an amended complaint which significantly
22   changes the original complaint that the plaintiff filed on
23   February 8.  Last night they also filed a motion for a TRO and
24   then followed by a motion for a preliminary injunction.
25             So all of this is last minute, but what is

10:44

1   outstanding about this complaint -- which as I say was filed

2   last night, but was preceded by a complaint filed on

3   February 8 -- is that there is no allegation that anything is

4   going to happen on Monday when this rule goes into effect.

5   These businesses have been in effect for many years prior to

6   2021 from what I gleaned from my bleary-eyed review of the

7   papers last night.  If their workers were independent

8   contractors prior to 2021, then they will continue to be

9   independent contractors.

10          There's no allegation in the complaint that any

11  of the workers changed their status as a result of the 2021

12  rule, so this is a manufactured emergency.  The 2024 regulation

13  that has been published is simply intended to align with prior

14  precedent.  It is not making any radical changes.  It is

15  reinstating what has existed for decades.  The plaintiffs do

16  not indicate that they have altered their business model or

17  will alter their business model.  They simply allege a very

18  speculative potential harm.

19          Furthermore, this rule, this 2024 rule which is

20  to go into effect Monday, is simply guidance.  It explains how

21  the Department of Labor would undertake the analysis of whether

22  a worker is an employee or an independent contractor, so it is

23  simply an interpretive guidance.  What would have to precede

24  any change in any worker's status due to Department of Labor

25  enforcement is that there would first have to be an

investigation and then there would have to be an enforcement
proceeding.

Believe me, I can assure you 100 percent that
between now and Monday or now and the next two or three weeks,
during which we ask for a reasonable time to respond to the
plaintiffs' filings, no enforcement proceeding or investigation
or final determination on any of plaintiffs' employees is going
to occur.  The plaintiffs have not alleged harm, they haven't
alleged that they changed anything in their business model, and
they have not met the standards for a TRO or, for that matter,
a preliminary injunction.

As I said, they amended their complaint
yesterday.  We are not in a position to discuss the merits at
length at this point because the two points they just raised
were newly raised, but I can assure the Court in its 200-page
single-spaced response to this over 55,000 comments that the
agency received since October 2023, it absolutely reviewed the
2021 rule and exhaustively discussed why it is contrary to
decades of judicial precedent.

I would also like to add that the litigation in
Texas, the decision in that case was vacated by the
Fifth Circuit recently.  The case has been remanded.  It did
not concern the merits of this case.  It concerned whether the
act of withdrawing the 2021 rule was valid.  That decision by
that court in Texas has been vacated because of the issuance of

10:48

1    this new rule.

2                We believe this is a manufactured emergency.

3    There is no excuse nor have plaintiffs offered any excuse for

4    this sort of gamesmanship, and their gambit should not be

5    rewarded with a temporary restraining order that they have

6    failed to justify.

7        **THE COURT:**  Let me hear a response to that.

8        **MR. DOUGHERTY:**  Well, first off, it sounds like the

9    government pretty much agrees that a temporary restraining

10   order would be appropriate because they said they are not going

11   to do anything and that preserving the status quo formally

12   would be the right thing to do until the Court has had an ample

13   opportunity to review briefing on the preliminary injunction.

14   I think that's sort of what I heard.

15               Going to the procedural aspects, the rule in

16   2024 does two things.  It brings into effect on Monday a new

17   way to classify independent contractors and it ushers out the

18   door the old rule, the 2021 rule.  It rescinds it.  Right now

19   and tomorrow and Sunday, the 2021 rule is still in effect until

20   it is rescinded on Monday.  That would be the appropriate

21   reason to issue a temporary restraining order, to preserve that

22   status quo.

23               In terms of procedurally, one plaintiff,

24   Frisard's Transportation, filed on February 8, which was

25   approximately -- well, actually less than 30 days after the

1    rule was published.  Yesterday the complaint was amended to add

2    four new parties, so there was no waiting at all.  In fact,

3    there's been, I believe -- even though we may disagree on the

4    merits of the arguments, I don't think you can look at the

5    papers that were filed yesterday and say anything was

6    gamesmanship or anything was something that's manufactured.

7                    Those are real facts backed up by real

8    declarations, backed up by organizations who are going to have

9    their business upended because of the new 2024 rule.  I would

10    disagree with the government that facts have been alleged that

11    these plaintiffs are going to occur substantial financial

12    injury with no opportunity or no guarantee of recovery which

13    supports irreparable injury.

14                    Nothing has been done to wait or to delay.  In

15    fact, the harm takes place on Monday morning, or probably at

16    12:01, I guess, Monday because that's when the new rule goes

17    into effect.  If the government's attorney is already conceding

18    in a telephone conference with the Court that they are not

19    going to enforce it, they are not going to do anything, well,

20    that's fine.  It would seem appropriate to go ahead and agree

21    to a TRO until this Court has had an opportunity to review all

22    of the briefing -- and certainly we don't disagree these are

23    complex issues -- to review the briefing on the preliminary

24    injunction.

25                    One point, though, this is the same Department

10:51

1    of Labor that issued the 2024 rule that also issued the 2021

2    rule.  They said the same thing in the 2021 rule, that this was

3    going to embody long-standing judicial precedent and so forth.

4    There may be a disagreement within the administrations, the

5    outgoing and the incoming, over policy, but DOL said the 2021

6    rule was implemented to do exactly what it's now changing

7    course 180 degrees with the 2024 rule.

8                    It seems appropriate -- we certainly supported

9    the motion for an emergency TRO to preserve the status quo, and

10   we simply ask that the Court postpone the effective date, which

11   is Monday, March 11, until it has had an opportunity to review

12   the preliminary injunction and have briefing.  We noticed this

13   for March 27 in accordance with the Local Rules.

14                   If the government wants to consent to a TRO or

15   postponing the effective date -- obviously the relief we

16   request in the preliminary injunction is to set the rule aside.

17   We are not asking that at the TRO stage.  We are just saying

18   postpone the effective day.

19                   DOL has said one thing in the 2021 rule and it's

20   saying the same thing in the 2024 rule, but providing a

21   completely different framework.  In terms of judicial economy

22   and in terms of preserving the status quo, this case is perfect

23   for a temporary restraining order to simply postpone the

24   effective date.

25                   **MS. OLSON:**  Your Honor --

10:53

1      **THE COURT:**  I will give the government a chance to

2   respond to that.  Go ahead.  Let me hear from the government.

3      **MS. OLSON:**  Thank you.  It is the plaintiffs' burden,

4   not our burden, to show that they are being harmed.  I defy

5   them to point to any single place in any of their filings which

6   shows that this rule will have a tangible, concrete effect on

7   them.  There is nothing more than the assertion of the

8   possibility of harm.

9          If that is so now, if it is true that their

10   independent contractor status might change now, then it was

11   probably true for the last 70 years.  If they are correctly

12   classified now, that is not going to change.  That was my

13   point, not that the government is not going to take any action,

14   but that they are not going to suffer any concrete harm because

15   this rule is simply aligned with decades of Fifth Circuit and

16   Supreme Court precedent.

17          Again, it is not our burden to show that.  They

18   are asking for extraordinary, drastic relief here, and it is

19   their burden to show harm.  They have failed to allege it, and

20   they have provided no evidence to show it.  He said there's

21   nothing new in this complaint.  They filed a complaint last

22   night which raises new claims.  They have had months, weeks to

23   do that.  They have gotten rid of old claims.  They have added

24   four new parties.

25          There's no excuse for this last-minute

10:55

 1   manufactured emergency, and that alone is grounds for denying

 2   the temporary restraining order.  They have sat on their rights

 3   for two months and have not demonstrated that they are going to

 4   suffer any harm that warrants this sort of extraordinary

 5   relief.

 6          **MR. DOUGHERTY:**  Your Honor, I do have a case in front

 7   of me.  I would like to at least point to those because there

 8   are clear facts in here.  Again, rights haven't been sat on

 9   because the injury takes effect when the new rule goes into

10   effect on Monday.  That's what's imminent.  It's imminent

11   because it's going to be on Monday.

12               I'm pulling that ECF 14-1, and we have

13   five declarations.  This was the elite plaintiff, Frisard's,

14   document 14-1 on page 4.

15               Paragraph 10:  "Frisard's will incur substantial

16   financial injury with no guarantee of eventual recovery as a

17   result of the 2024 rule."

18               Paragraph 11:  "For example, the 2024 rule

19   threatens to upend Frisard's business operations, increasing

20   costs, depriving truckers of the opportunity to operate

21   independently within their own business, and potentially

22   driving many" of those independent contractors that they

23   contract with out of business and into different lines of

24   business other than Frisard's business "depriving it of needed

25   manpower to deliver cargo wherever its clients need it

10:56

1    delivered."

2              All five declaration say that.  Also, in the

3    same 14-1, it says in paragraph 4:  "Frisard's has relied on

4    the 2021 rule since its effective date of March 8, 2021, when

5    classifying its independent contracting labor."

6              So there are reliance interests three years to

7    the day -- today is March 8, 2024, of course.  There have been

8    reliance interests for three years, and that is how these

9    businesses have determined and classified their workers into

10   independent contractors versus employees for three years.

11             Those are significant reliance interests that

12   the Fifth Circuit said are to be taken into account, and when

13   an agency does not take that into account -- and as we noted in

14   the briefing, the agency just kind of flippantly said the

15   information is unpersuasive that there would be significant

16   reliance interests.  Well, these employers who employ

17   independent contractors, it's a significant core part of their

18   business.  They relied on the 2021 old rule for three years in

19   terms of classifying.  Starting on Monday, they are going to

20   incur substantial financial injury with no guarantee of

21   recovery.

22             So those are declarations, and I don't think

23   it's appropriate to say that facts have not been alleged when

24   you have declarations as specific and nonconclusory in fact.

25             **MS. OLSON:**  Your Honor, if I may.

10:58

1       **THE COURT:**  Go ahead.

2       **MS. OLSON:**  First of all, out of the plaintiffs' own

3 mouth, they make bare assertions of threats of harm.  That's

4 the word he used.  Potential harm, possible harm, this is not

5 concrete injury, and I think it's deceptive to say that they

6 have relied on the classification for three years.

7       What they have failed to allege is that they

8 changed their classification over the last three years and that

9 they are going to have to change it again.  There is no

10 allegation to that effect.  It is just deceptive to say that

11 they have relied on it for three years in classifying.  The

12 odds are very high that the classifications they have enjoyed

13 for the last three years are the same classifications that

14 existed prior to the 2021 rule and that will continue to exist

15 on Monday.

16       The second point I would like to make, if I may,

17 please, is an administration is entitled to change course as

18 long as it reasonably considers the comments that are made and

19 offers a reasonable explanation for its decisions.  The

20 preamble to this rule is nothing if not exhaustive,

21 comprehensive, and thoroughly reasoned and thought out.

22       Most importantly, it is based on judicial

23 precedent for the last 70 years.  The administration determined

24 that the 2021 rule was a digression from that precedent and

25 decided to reinstate the law that was in effect, used by courts

11:00

1    universally and unanimously throughout the country for the last

2    70 years.  No court, to the Department of Labor's knowledge,

3    has used or endorsed the 2021 analysis to date.

4                    That's all I wanted to say.  Thank you.

5              **THE COURT:**  Any response to that?

6              **MR. DOUGHERTY:**  Well, our whole point is they

7    literally said that there was no reason to do any kind of

8    gathering of data before they rescind the 2021 rule, and that's

9    clearly not the law as we noted in the briefing.

10                    The government's attorney just mentioned

11   something about odds are entirely unlikely.  Well, that's a

12   declaration from four businesses and one organization who

13   advocates on behalf of the trucking association.  I didn't see

14   any supporting counter declaration in their response.

15                    If the government has declarations to counter

16   that, that somehow our clients had not relied on independent

17   contracting, they are certainly welcome to put forward that,

18   but those are declarations and that's what they swore to.  We

19   believe we certainly met the standard to have this Court issue

20   a TRO to preserve the status quo because as of Monday the 2021

21   rule will go away.  We believe that's the appropriate thing to

22   do at this point.  Certainly there's some complex issues that

23   can be sorted out through briefing and counter briefing on the

24   preliminary injunction, but at least preserving the status quo

25   is the appropriate thing to do in the short term.

11:01

1          **MS. OLSON:**  Your Honor --

2          **THE COURT:**  Go ahead.

3          **MS. OLSON:**  -- a brief response.  One last thing.

4                 He brought up gathering of data more than once.

5     They filed their amended complaint and this TRO motion after

6     business hours yesterday, made significant changes to the

7     complaint that was previously filed, and we certainly wouldn't

8     have had a chance to get declarations even if we needed them.

9                 The important thing is that they have not

10    alleged any tangible harm.  It's all threats of harm

11    potentially upending their business.  The assertion that

12    there's been no gathering of data, this is almost certainly

13    taken out of context, because the Department of Labor

14    exhaustively considered all of the information presented to it

15    in over 55,000 comments and responded to address all the points

16    raised in those comments.

17                They are attempting to argue the merits here.

18    We aren't prepared to argue the merits, but I can assure the

19    Court that that point is addressed somewhere in these comments.

20    I would surmise that what I was saying was taken out of

21    context.  I think the operable fact here is they simply have

22    not alleged concrete harm, and it is their burden to do that.

23    I think a TRO is unwarranted.  They have not met the standard

24    for it.

25                **THE COURT:**  Okay.  I understand the position of both

11:03

1    parties.  They have articulated their positions well.

2                    Let me begin by reminding everyone that a TRO or

3    a preliminary injunction is an extraordinary and drastic remedy

4    and not to be granted routinely, but only when the movant, in

5    this case the plaintiff, by an appropriate showing carries the

6    burden of persuasion.

7                    The movant must satisfy each of the traditional

8    criteria in order to be entitled to a preliminary injunction or

9    a TRO.  First is the irreparable injury.  Second, of course, is

10   the standard likelihood of success on the merits.  Third is a

11   favorable balance of hardships.  Fourth is no adverse effect on

12   the public interests.

13                   In this case it appears to me that the question

14   of immediate harm hasn't been shown, its potential maybe, but

15   this is not -- while it's a change in the rule, it seems to be

16   a resurrection of a position that had been in effect for some

17   70 or 80 years.  The likelihood of success is at least

18   questionable, if not able to be sustained.

19                   So because there's no immediate threat of harm

20   or immediate harm, if there is harm, there's adequate

21   opportunity for the person who is harmed to show specifically

22   what the harm is and how the individual has been harmed.  I

23   think that the plaintiff in this case fails to establish at

24   least one, if not two or three, of the requirements to get a

25   preliminary injunction and/or TRO.  For all of those reasons, I

11:06

1  will deny the motion.

2          Thank you very much, both of you.  I appreciate

3  your participation.

4          (Proceedings adjourned.)

5                              * * *

6                         **CERTIFICATE**

7          I, Toni Doyle Tusa, CCR, FCRR, Official Court

8  Reporter for the United States District Court, Eastern District

9  of Louisiana, certify that the foregoing is a true and correct

10 transcript, to the best of my ability and understanding, from

11 the record of proceedings in the above-entitled matter.

12

13

14                         */s/ Toni Doyle Tusa*
                           Toni Doyle Tusa, CCR, FCRR
15                         Official Court Reporter

16

17

18

19

20

21

22

23

24

25