UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | | |
| FRISARD'S TRANSPORTATION, ) | | |
| L.L.C., *et al.*, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | Civil Action No. | |
| ) | | |
| UNITED STATES DEPARTMENT ) | 2:24-cv-00347-EEF-EJD | |
| OF LABOR, *et al.*, ) | | |
| ) | | |
| Defendants. ) | | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ ) | | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR ALTERNATIVELY FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Fair Labor Standards Act, 29 U.S.C. §§ 201-19 ("FLSA" or "Act"), was enacted in

1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of

living necessary for health, efficiency, and general well-being of workers."  29 U.S.C. § 202.  To

this end, the FLSA requires employers to pay a minimum wage and overtime pay to workers who

are "employees" under the Act; based on judicial interpretation, this includes workers who, as a

matter of economic reality, are economically dependent on the employer for work, rather than

independent contractors who are in business for themselves.  The interpretive guidance at issue in

this litigation, *see* Employee or Independent Contractor Classification Under the Fair Labor

Standards Act, 89 Fed. Reg. 1638-01 (Jan. 10, 2024) (adding 29 C.F.R. Part 795) ("2024 Rule"),

is rooted in decades of Supreme Court and federal circuit court precedent (including in this

Circuit), and the Department of Labor's ("Department's") own previous subregulatory guidance.

The 2024 Rule provides specific factors to guide an assessment of the "economic realities" of the

working relationship to determine whether a worker is an employee or an independent contractor. 29 C.F.R. §§ 795.105(b), 110.

As courts have acknowledged, the analysis is not based on "neat diagnostic formulas." *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1043 (5th Cir. 1987). Instead, it depends on the "myriad" circumstances of each employment relationship to determine the worker's degree of economic dependence on the employer. *See Brock*, 814 F.2d at 1043. In accordance with decades of judicial precedent and the Department's previous subregulatory guidance, the 2024 Rule provides regulatory explanations of each of the factors that are analyzed to evaluate the "totality of the circumstances."

The 2024 Rule also rescinded the interpretive guidance that the Department published in January 2021, Independent Contractor Status Under the Fair Labor Standards Act, 86 Fed. Reg. 1168-01 (Jan. 7, 2021) ("2021 Rule"). *See* 89 Fed. Reg. 1639. The 2021 Rule had narrowed the set of factors historically used by courts in the economic reality analysis in favor of two "core factors" that the 2021 Rule declared "most probative." This approach reflected a departure from the analysis established by decades of judicial precedent, and excluded from consideration certain facts which had previously been understood by courts and the Department as relevant to determining whether a worker is an employee or independent contractor. The Department determined that these changes would have a confusing and disruptive effect on workers and businesses alike and were contrary to longstanding precedent and the text of the Act as interpreted by courts.

Lacking Article III standing and simply based on a disagreement with the Department's reasonable interpretations, plaintiffs ask the Court to invalidate the 2024 Rule. This would sweep away interpretive guidance that: (1) is consistent with Fifth Circuit (and other) precedent

instructing that the determination of employee or independent contractor status under the FLSA must be based on a multifactor "economic reality" test, where the totality of the circumstances are considered and no one factor is determinative, *see Brock*, 814 F.2d at 1043-44; and (2) is consistent with the analysis that has, from the 1940s until the 2021 Rule, generally guided the Department in the exercise of its enforcement authority under the FLSA, as well as employers and employees more broadly.  Plaintiffs lack standing because their alleged injuries are purely hypothetical. Plaintiffs raise the specter of widespread reclassifications and business restructuring, but they fail to cite even a single instance where the 2024 Rule has caused this to occur, or to provide a speck of evidence that they had actually relied on the 2021 Rule.  Their speculative allegations of harm are particularly implausible given that plaintiffs have operated for years prior to the 2021 Rule -- apparently unharmed by the very same economic reality analysis embodied in the 2024 Rule that was utilized from the 1940s until the 2021 Rule was published.

Even if the Court had jurisdiction, plaintiffs' attacks on the 2024 Rule fail on the merits. Plaintiffs' differences of opinion about Departmental interpretations fall far short of what is required to show that an agency's action is so unreasoned as to be unlawful.  The 2024 Rule is well within the Department's authority under the FLSA to interpret the Act.  The Rule's analysis of the distinction between employees and independent contractors faithfully applies the FLSA's broad definitions and is consistent with decades of precedent in the Supreme Court and circuit courts, including this Circuit.

Nor is the 2024 Rule arbitrary and capricious.  As the Department reasonably concluded, the 2024 Rule is consistent with the FLSA's text as interpreted by courts and less likely to cause confusion than the 2021 Rule due to its consistency with judicial precedent.  If applied by employers and courts, the 2024 Rule should help prevent the misclassification of workers, which

results in the denial of FLSA protections for employees and places businesses that comply with the law at a competitive disadvantage. The Court should therefore uphold the 2024 Rule.

For these reasons, as set forth more fully below, defendants' motion to dismiss or alternatively for summary judgment should be granted.

## BACKGROUND

### A.    The Fair Labor Standards Act

Congress enacted the FLSA in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202; 89 Fed. Reg. 1638; *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019); *see Brock*, 814 F.2d at 1043 ("Congress passed the FLSA in order to palliate the grave economic ills then ailing our nation."); *Usery v, Pilgrim Equip. Co.*, 527 F.2d 1308, 1310-11 ("The purpose of the FLSA is to 'eliminate low wages and long hours' and 'free commerce from the interferences arising from production of goods under conditions that were detrimental to the health and well-being of workers.'") (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947)). The FLSA requires covered employers to pay nonexempt employees at least the federal minimum wage and 1.5 times the employee's regular rate for hours worked in excess of 40 hours in a workweek. 29 U.S.C. §§ 206(a) & 207(a); 89 Fed. Reg. 1638. The FLSA also mandates that employers keep certain records regarding employees. 29 U.S.C. § 211(c); 89 Fed. Reg. 1638.

The Act generally defines an employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1), an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and to "employ" as including "to suffer or permit to work." 29 U.S.C. § 203(g); 89 Fed. Reg. 1638. The FLSA does not define

independent contractor; they are outside the broad scope of workers covered as employees by the Act.  *Rutherford*, 331 U.S.at 729; 89 Fed. Reg. 1638.

**B.     The Economic Reality Analysis and Its Application by the Courts**

Since the 1940s, courts have applied an "economic reality" analysis, grounded in the FLSA's broad understanding of employment, to determine whether a worker is an employee or an independent contractor under the Act.  89 Fed. Reg. 1638, 1641-42 (citing *Rutherford*, 331 U.S. 722 (1947) and discussing *U.S. v. Silk*, 331 U.S. 704 (1947); *Bartels v. Birmingham*, 332 U.S. 126 (1947); *NLRB v. Hearst Publ'ns, Inc.*, 322 U.S. 111 (1944)).  The analysis looks at whether, as a matter of economic reality, the worker is economically dependent on the employer for work (and is thus an employee) or is in business for herself (and is thus an independent contractor), rather than simply whether the employer has control over the worker under the narrower standards of the common law.  89 Fed. Reg. 1638, 1641.  In assessing economic dependence, courts have historically conducted a totality-of-the-circumstances analysis and considered multiple factors, with no one factor or factors having predetermined weight.  *Id.* at 1638, 1641-44.  These factors generally include the opportunity for profit or loss, investment, permanency, control, whether the work is an integral part of the employer's business, and skill and initiative.  *Id.* at 1638, 1641-43.

Specifically, in *Silk*, the Supreme Court identified five factors as "important" for distinguishing between employees and independent contractors: "degrees of control, opportunities for profit or loss, investment in facilities, permanency of relation[,] and skill required in the claimed independent operation."  89 Fed. Reg. 1641 (quoting *Silk*, 331 U.S. at 716).  However, the Court explained that no single factor is dispositive, nor are the listed factors exhaustive.  89 Fed. Reg. 1641 (citing *Silk*, 331 U.S. at 716 (stating that "[n]o one is controlling nor is the list complete")).  On the same day that the Supreme Court decided *Silk*, it also decided *Rutherford*, in which it affirmed a federal court of appeals decision that analyzed an FLSA employment

relationship based on economic realities. *Id.* at 1641 (citing *Rutherford*, 331 U.S. at 727). In *Rutherford*, the Court considered several of the *Silk* factors and also noted that the workers in question were best characterized as "part of the integrated unit of production under such circumstances that the workers performing the task were employees." *Id.* at 1641 (quoting *Rutherford*, 331 U.S. at 729-30).

Consistent with *Silk*, *Rutherford*, and their progeny, all federal courts of appeals apply the totality-of-the-circumstances economic reality analysis, using the factors articulated in those cases while acknowledging that they are not exhaustive and should not be applied mechanically. 89 Fed. Reg. 1642 & nn.52-53 (listing cases). No federal court of appeals has allowed any factor presumptively to predominate over others. *Id.* at 1642 & n.53 (listing cases). For example, in *Parrish*, the Fifth Circuit determined whether there existed an employer-employee relationship by examining "whether the alleged employees, as a matter of 'economic reality,' are 'economically dependent' on the business to which they supply their labor and services." 917 F.3d at 379 (quoting *Brock*, 814 F.2d at 1043).

The Fifth Circuit applies the "five, non-exhaustive [*Silk*] factors" relevant "to determin[ing] whether the individual is, as a matter of economic reality, in business for himself." *Parrish*, 917 F.3d at 379. The factors are: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. 89 Fed. Reg. 1642 n.53 (citing *Parrish*, 917 F.3d at 380); *see also id.* at 1642 & n.52 (citing *Brock*, 840 F.2d at 1058-59; *Pilgrim*, 527 F.2d at 1311). The Fifth Circuit applies

these factors to "guide" its inquiry, noting that "[n]o single factor is determinative," and "the factors should not 'be applied mechanically.'" *Parrish*, 917 F.3d at 379-80.

The Fifth Circuit typically does not identify the "integral part" factor as one of the considerations that guides its analysis.  89 Fed. Reg. 1642 (citing *Pilgrim*, 527 F.2d at 1311).  However, recognizing that its list of enumerated factors is not exhaustive, the Fifth Circuit has in some cases considered the extent to which a worker's function is integral to the business when conducting its economic reality analysis.  *See, e.g.*, *Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 836 (5th Cir. 2020) (considering "the extent to which the pipe welders' work was 'an integral part' of Petroplex's business"), *cited in* 89 Fed. Reg. 1642.  And every other federal court of appeals that has decided an FLSA case involving alleged independent contractors includes the "integral part" factor among the list of enumerated economic reality factors.  *Id.* at 1642 & n.57 (citing *id.* at 1642 & n.52).

In the years since the Supreme Court set forth these principles, the Court has steadfastly rejected common law control[1] as the determining factor under the FLSA and has remained committed to determining employment under the FLSA holistically by analyzing the economic realities of the working relationship.  *Id.* at 1642 (citing *Goldberg v. Whitaker House Co-op, Inc.*, 366 U.S. 28, 33 (1961) (quoting from *Silk* and *Rutherford)* (economic reality is the test of

---

[1] When distinguishing between employees and independent contractors under the common law, courts evaluate "the hiring party's right to control the manner and means by which the product is accomplished."  89 Fed. Reg. 1641 & n.29 (quoting *Comty. for Creative Nonviolence v. Reid*, 490 U.S. 730, 751 (1989)).  Unlike the common law's control-focused analysis, the economic reality test under the FLSA focuses more broadly on a worker's economic dependence on an employer for work.  89 Fed. Reg. 1641; *see Castillo v. Givens*, 704 F.2d 181, 189 (5th Cir. 1983) ("[T]he common-law control test is not conclusive," and "[t]he statutory coverage is not limited to those persons whose services are subject to the direction and control of their employer, but rather to those who, as a matter of economic reality, are dependent upon the business to which they render service.").

employment under the FLSA)); *Nationwide Mut. Ins. v. Darden*, 503 U.S. 318, 325-26 (1992) (FLSA defines employee to cover some parties who might not qualify as such under the common law) (citing *Rutherford*)).

**C.    The Department's Prior Guidance**

In 1949, the Department first issued an opinion letter "distilling six 'primary factors which the Court considered significant' in *Rutherford* and *Silk*," emphasizing that "no single factor is controlling" in determining whether an employment relationship exists under the FLSA.  89 Fed. Reg. at 1643.  In the decades since, the Department has generally applied a similar multifactor economic reality analysis, following legal precedent and the guiding principles announced therein not to apply factors mechanically or assign any factor a predetermined weight.  *See id.* 1642-44.

**D.    The 2021 Independent Contractor Rule**

On January 7, 2021, the Department published the 2021 Rule with an effective date of March 8, 2021.  *See* 89 Fed. Reg. at 1639; 86 Fed. Reg. at 1168.  The 2021 Rule added a new part to Title 29 of the Code of Federal Regulations (Part 795), introducing a new generally applicable interpretation regarding whether a worker is an employee or an independent contractor.  89 Fed. Reg. 1638-39, 1727.  Although the rule reiterated the longstanding principle that a worker is an employee if, as a matter of economic reality, the worker is economically dependent on the employer for work, *id.* at 1644, the rule made significant changes to how the analysis is applied, *id.* at 1638-45.

The Department and most courts have applied the six economic reality factors that the Court considered significant in *Rutherford* and *Silk* to determine whether a worker is an employee under the FLSA or an independent contractor.  *Id.* at 1641-44 (discussing case law and Department guidance).  The 2021 Rule, on the other hand, applied five economic reality factors in a novel

fashion.  In contrast to the Department's prior guidance and contrary to case law, the 2021 Rule designated two of the five factors as "core factors" that should always carry greater weight in the analysis, meaning that, if they both indicate the same classification, there is a "substantial likelihood" that that classification is the correct classification.  *Id.* at 1638; *see* 29 C.F.R. § 795.105(c), *quoted in* 86 Fed. Reg. 1246.

The two core factors were: (1) the nature and degree of control over the work, and (2) the worker's opportunity for profit or loss (which included the workers' initiative and investments). 89 Fed. Reg. 1644.  The three remaining, "less probative" factors were: (3) the amount of skill required for the work, (4) the degree of permanence of the working relationship between the worker and the employer, and (5) whether the work is part of an integrated unit of production.  89 Fed. Reg. 1645; 86 Fed. Reg. 1171.  Under the 2021 Rule, these other factors were "less probative and, in some cases, may not be probative at all" of economic dependence and were "'highly unlikely, either individually or collectively, to outweigh the combined probative value of the two core factors.'"  89 Fed. Reg. 1645.  The 2021 Rule also considered investment and initiative only as part of the opportunity for profit or loss factor, and excluded consideration of whether the work performed is central or important to the potential employer's business.  These and other provisions in the 2021 IC Rule narrowed the economic reality test by limiting the facts that may be considered as part of the test—facts which the Department believes are relevant in determining whether a worker is economically dependent on the employer for work or is in business for themself.  *Id.* at 1647.

Shortly after the change in Administration in 2021, the Department first delayed and then withdrew the 2021 Rule.  *See* 86 Fed. Reg. 12535 (Mar. 4, 2021) (the Delay Rule); 86 Fed. Reg. 24303 (May 6, 2021) (the Withdrawal Rule).  Both the Delay Rule and the Withdrawal Rule were

challenged in *Coalition for Workforce Innovation v. Walsh*, No. 1:21-cv-130, 2022 WL 1073346 (E.D. Tex. Mar. 14, 2022) ("*CWI*"). The district court in *CWI* held that the Delay and Withdrawal Rules violated certain provisions of the Administrative Procedure Act and vacated both. *See id.* The Department appealed, and the Fifth Circuit ultimately vacated the district court's decision as moot after the Department promulgated the 2024 Rule. *See* Order, *CWI*, No. 22-40316 (5th Cir. Feb. 19, 2024), ECF No. 82. The case was then remanded to allow the plaintiffs in that case to file an amended complaint.

**E.    The 2024 Rule**

On October 13, 2022, the Department published in the Federal Register a new proposed rule for public comment. *See Employee or Independent Contractor Classification Under the Fair Labor Standards Act*, 87 Fed. Reg. 62,218 (Oct. 13, 2022), *available at* https://www.govinfo.gov/content/pkg/FR-2022-10-13/pdf/2022-21454.pdf. After receiving and considering over 55,000 comments on the proposed rule, on January 10, 2024, the Department promulgated the 2024 Rule, which became effective on March 11, 2024. The 2024 Rule rescinds the 2021 Rule and separately replaces it with an interpretation that is more consistent with judicial precedent and the Act's text and purpose as interpreted by the courts. 89 Fed. Reg. 1638, 1647; *see* 29 C.F.R. Part 795. Specifically, the 2024 Rule embodies a totality-of-the-circumstances economic reality analysis in which the factors do not have predetermined weight. 89 Fed. Reg. 1645. Those factors include: (1) the worker's opportunity for profit or loss depending on managerial skill; (2) investments by the worker and the potential employer; (3) degree of permanence of the work relationship; (4) nature and degree of control; (5) extent to which the work performed is an integral part of the potential employer's business; and (6) the worker's skill and initiative. 29 C.F.R. §§ 795.110(b)(1)-(6). The preamble to the 2024 Rule also provides a

detailed discussion of the application of each factor to serve as a guide for determining whether a worker is an employee. *See* 89 Fed. Reg. 1671-1725. However, the 2024 Rule expressly emphasizes that it consists solely of "general interpretations" and is "intended to serve as a 'practical guide to employers and employees' as to how the Department will seek to apply the Act." 29 C.F.R. § 795.100.

## F.    This Lawsuit

Plaintiffs filed their original complaint on February 8, 2024, ECF No. 1, and filed their First Amended Complaint for Declaratory and Injunctive Relief ("Compl.") on March 7, 2024, ECF No. 9. Plaintiffs claim that: (1) the 2024 Rule is arbitrary and capricious, an abuse of discretion, and not in accordance with law, in violation of 5 U.S.C. § 706(2)(A) of the APA, Compl. ¶¶ 88-96; and (2) the 2024 Rule is in excess of statutory authority in violation of 5 U.S.C. § 706(2)(C) of the APA, Compl. ¶¶ 97-102. Plaintiffs ask the Court to enjoin defendants from enforcing the 2024 Rule and to declare it unlawful and set it aside.[2]

On March 7, 2024, plaintiffs filed motions for a temporary restraining order and a preliminary injunction. ECF Nos. 14, 15. The Court held a March 8, 2024 hearing on plaintiffs' motions and denied both motions. Minute Order, ECF No. 19. The Court found that "there's no immediate threat of harm or immediate harm," Transcript at 20 ll.19-20, and that the 2024 Rule "seems to be a resurrection of a position that had been in effect for some 70 or 80 years," *id.* at 20 ll. 13-17. The Court further found that "[t]he likelihood of success is at least questionable . . . ." *Id.* at 20 ll. 17-18. Plaintiffs filed a notice of appeal on April 8, 2024. ECF No. 22.

---

[2] To the extent plaintiffs seek a nationwide injunction, that relief would be inappropriate. See generally *United States v. Texas*, 599 U.S. 670, 693-99 (2023) (Gorsuch, J., concurring in the judgment); *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring); *Nuziard v. Minority Business Dev. Agency*, __ F. Supp. 3d __, No. 4:23-cv-00278-P, 2024 WL 965299, at *42 (N.D. Tex. March 5, 2024).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires dismissal if a court lacks subject-matter jurisdiction. A motion to dismiss filed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court "before any other challenge because the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994) (internal citation omitted). Plaintiffs bear the burden of establishing the Court's jurisdiction by a preponderance of the evidence, and the district court must presume that the suit lies outside its limited jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Raoul A. Galan, Jr. v. Deepwater Horizon Med. Benefits Settlement Claims Adm'r*, No. 23-30459, 2023 WL 8434048, at *1 (5th Cir. Dec. 5, 2023).

A party may file a motion for summary judgment at any time until 30 days after the close of all discovery. "The court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When assessing a summary judgment motion in an APA case, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 (1973); *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013); *ExxonMobil Corp. v. Mnuchin*, 430 F. Supp. 3d 220, 228 (N.D. Tex. 2019). Put differently, "[t]he entire case on review is a question of law, and only a question of law." *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). In such cases, summary judgment merely "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and [is] otherwise consistent with the APA standard of review." *Rolling Meadow Ranch Groves, LLC v. U.S. Dep't of Agric.*, No. 21-14058-CIV, 2023 WL 5300431, at *2 (S.D. Fla. July 16, 2023).

**ARGUMENT**

I.    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING**

A.    **Plaintiffs Show No Certainly Impending Injury Warranting Injunctive Relief**

Plaintiffs lack standing to pursue their claims for declaratory and injunctive relief against the Department.  "Article III of the Constitution limits federal courts' jurisdiction" to the adjudication of "'Cases' and 'Controversies,'" and thereby requires plaintiffs to "establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (quotation omitted).  The party invoking federal jurisdiction bears the burden of establishing the three elements of Article III standing to sue.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To have standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Lutostanski v. Brown*, 88 F.4th 582, 585–86 (5th Cir. 2023) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

To establish standing to pursue prospective injunctive relief, such as the "permanent injunction" plaintiffs seek, Compl., Prayer for Relief ¶ A, plaintiffs must demonstrate that they are "immediately in danger of sustaining some direct injury" that is "real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  And where standing turns on a claim of future injury, the threatened injury must be "certainly impending," or there must be "a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *TransUnion*, 594 U.S. at 435 (A plaintiff alleging a "risk of future harm" must show that the risk "is sufficiently imminent and substantial."); *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019).  "Allegations of only a 'possible' future injury . . . will not suffice."

13

*Abdullah v. Paxton*, 65 F.4th 204, 208 (5th Cir. 2023) (quoting *Clapper*, 568 U.S. at 409), *cert. denied*, 144 S. Ct. 188 (2023).

Plaintiffs' speculative allegations do not meet these requirements. Four plaintiffs are transportation companies that hire independent contractors and, in some cases, "in-house" (presumably employee) drivers as well. Compl. ¶¶ 6, 8-10, 50, 65, 67, 73, 75, 83. The fifth is an association that represents trucking and related companies, and whose members hire independent contractors. *Id.* ¶¶ 7, 58. Plaintiffs' standing theory is founded upon pure conjecture that plaintiffs "will" incur financial injury as a result of the 2024 Rule, and that the 2024 Rule "threatens" to upend their business operations by "potentially" driving many independent contractors out of business. *Id.* ¶¶ 54-55, 60-61, 69-70, 77-78, 86-87. But the Complaint fails to allege any actual or "certainly impending" injury to plaintiffs, or to present any specific facts to show it. Tellingly, not one of plaintiffs, which collectively represent a multitude of members, *see id.* ¶ 56, has cited a single instance in which one of their workers or independent contractors should be or has actually been reclassified as an employee as a result of the 2024 Rule. Plaintiffs' unsubstantiated assertions that the 2024 Rule "threatens" their business practices in some undefined way "are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper*, 568 U.S. at 418; *cf.* Minute Entry [ECF No. 19] (finding "no immediate threat of harm or immediate harm" to plaintiffs).

Plaintiffs' fears are especially unfounded in light of what the 2024 Rule actually says. As the Department explained, the Rule "is not intended to disrupt the businesses of independent contractors who are, as a matter of economic reality, in business for themselves." 89 Fed. Reg. at 1638. The Rule instead "provides a consistent approach for those businesses that engage (or wish to engage) independent contractors as well as for those who wish to work as independent

14

contractors." *Id.* at 1640.  Thus, the Department "does not anticipate that independent contractors

… who are correctly classified as independent contractors under current circuit law would be

reclassified." *Id.* at 1659; *see also id.* at 1658-59 (supportive comments).

Indeed, the Complaint indicates that plaintiffs and the established entities they represent

were in business for years before the promulgation of the 2021 Rule.  Compl. ¶¶ 7-10, 47.  There

is no credible basis for asserting that the 2024 Rule harms plaintiffs, and indeed, they offer none,

given that the 2024 Rule simply adopts "guidance derived from the same analysis that courts have

applied for decades," 89 Fed. Reg. at 1658, under which plaintiffs and their members apparently

operated without injury.  In other words, if plaintiffs and their members were able to work as or

engage properly classified independent contractors before the 2021 Rule, then the 2024 Rule

should not change those circumstances, and plaintiffs do not allege any facts showing that they are

now likely to be the subject of enforcement action alleging violations of the requirements under

the FLSA based on misclassification of their workers.

## B.    Plaintiffs Show No Causality or Redressability Warranting Injunctive Relief

Plaintiffs also fail to meet their burden of showing any "line of causation" that is more than

"attenuated" between the 2024 Rule and the possibility that their drivers are misclassified as

independent contractors and may need to be reclassified as employees.  *Allen v. Wright*, 468 U.S.

737, 757 (1984).  Nor have plaintiffs shown it to be "likely" that the requested relief against the

Department—or any equitable relief within the Court's authority to award—would redress their

alleged harm.  *Inclusive Comtys. Project, Inc. v. Dep't of Treasury*, 946 F.3d 649, 655 (5th Cir.

2019) (To satisfy redressability, a plaintiff must show that "it is *likely,* as opposed to merely

*speculative*, that the injury will be redressed by a favorable decision.") (emphasis added by Fifth

Circuit) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181

(2000)).  The principles underlying the 2024 Rule operated for 70 years until the 2021 Rule was

published, and plaintiffs do not allege that they actually changed their business practices (such as who they hire or how they classify the workers whom they hire) as a result of either Rule. Thus, any risk existing now that plaintiffs' workers are misclassified has likely not changed since the 2024 Rule took effect. By the same token, if plaintiffs' workers have been correctly classified during their many years of operation, that classification will not change as a result of the 2024 Rule. Because plaintiffs cannot show that their activities are or will be affected in any significant way by the 2024 Rule, or that injunctive relief would serve any purpose, they lack standing to assert claims for injunctive relief.

### C.      There Is No Immediate Controversy Warranting Declaratory Relief

"[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing . . . for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. Plaintiffs seek declaratory relief in tandem with injunctive relief, Compl., Prayer for Relief ¶ B, but their claim for declaratory relief is just as flawed and must suffer the same fate. The Article III case-or-controversy requirement is "no less strict" when a party is seeking a declaratory judgment than for any other relief. *Altvater v. Freeman*, 319 U.S. 359, 363 (1943); *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). Where there is "no ongoing injury to [plaintiffs] and any threat of future injury is neither imminent nor likely, there is not a live case or controversy for this court to resolve and a declaratory judgment would therefore be inappropriate." *Bauer v. Tex.*, 341 F.3d 352, 358 (5th Cir. 2003).

16

Here, plaintiffs fail to show a "substantial controversy . . . of sufficient immediacy and reality" to warrant declaratory relief against the Department. *MedImmune,* 549 U.S. at 127. As with their claim for injunctive relief, plaintiffs allege no facts indicating that the 2024 Rule has resulted in the reclassification of their independent contractors as employees or that they can no longer engage independent contractors (or must engage them on materially different terms) as a result of the 2024 Rule. Indeed, it is unclear what purpose would be served by a declaratory judgment against the Department, or what "controversy" such relief would address, when the indicates that nothing in plaintiffs' business practices has actually changed as a result of the 2024 Rule. Hence, plaintiffs' request for a declaratory judgment should be denied.

## II.    ALTERNATIVELY, JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS

To the extent the Court concludes that it has jurisdiction, the Court should enter judgment for the Department. Because the issues are entirely legal, this case is amenable to resolution on summary judgment, and the Department has filed the certified list of the contents of the administrative record (all of which are publicly available) with the Court. The 2024 Rule is a reasoned, and indeed, correct interpretation of the FLSA's statutory definitions and falls well within the Department's inherent authority to interpret the FLSA. The Department also did not act arbitrarily in promulgating the 2024 Rule, which carefully synthesizes precedent to generate a familiar and readily applicable interpretation to guide how the Department would analyze a worker's classification. The 2024 Rule falls well within the "zone of reasonableness," *see FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021), and is valid. For these reasons, summary judgment should be entered in defendants' favor.

### A.    The 2024 Rule Falls Well Within the Department's Statutory Authority and Is Valid Under 5 U.S.C. § 706(2)(C)

Plaintiffs claim that the 2024 Rule is in excess of statutory authority in violation of 5 U.S.C. § 706(2)(C) because it is allegedly not supported by binding court precedent or the text of the FLSA. Compl. ¶ 99. But the 2024 Rule's totality of the circumstances economic reality analysis seamlessly aligns with judicial precedent and the FLSA's text, as well as congressional intent. 89 Fed. Reg 1650. Defendants' adoption of the 2024 Rule was therefore rational and within the Department's statutory authority.

### 1.    The 2024 Rule is consistent with binding judicial precedent

The 2024 Rule applies the economic reality test by examining the totality of the circumstances and treating no single factor as dispositive. 89 Fed. Reg. 1668. Plaintiffs challenge the 2024 Rule's "insist[ence] on a so-called 'totality of the circumstances' analysis" as if that analysis were a Departmental creation. *See* Compl. ¶ 39. But in fact, the Supreme Court first declared and has repeatedly emphasized that employment status under the FLSA turns upon the "circumstances of the whole activity," rather than "isolated factors." 89 Fed. Reg. 1651 n.125 (quoting *Rutherford*, 331 U.S. at 730; citing *Silk*, 331 U.S. at 716, 719 (denying the existence of a "rule of thumb to define the limits of the employer-employee relationship" and determining employment status based on "the total situation")). Similarly, federal appellate courts have consistently cautioned against a mechanical or formulaic application of the economic reality test, 89 Fed. Reg. 1651 & n.126 (citing cases), and specifically warn that it "'is impossible to assign to each of these factors a specific and invariably applied weight.'" *Id.* at 1651 (quoting *Parrish*, 917 F.3d at 380 (quoting *Hickey v. Arkla, Inc.*, 699 F.2d 738, 752 (5th Cir. 1983)).

Plaintiffs claim that the 2024 Rule "departs" from Supreme Court and Fifth Circuit precedent that they assert was embodied in the 2021 Rule, Compl. ¶ 90, but plaintiffs have it backwards. By elevating two "core factors" as "most probative," the 2021 Rule ran counter to

Supreme Court and federal court of appeals precedent holding that no single factor in the economic reality analysis is dispositive. 89 Fed. Reg. 1651 & n.128 (citing cases). As the Fifth Circuit stated, "[n]o single factor is determinative," and "the factors should not be applied mechanically." *Parrish*, 917 F.3d at 379-80. Accordingly, the 2021 Rule, *not* the 2024 Rule, "departs" from established precedent.

Indeed, in contrast to the 2021 Rule, *no* court of appeals considers any one factor or combination of factors invariably to predominate over the others. 89 Fed. Reg. 1642 & nn.52, 53 (citing *Parrish,* 917 F.3d at 380 (stating that "the test cannot be rigidly applied" and "[i]t is impossible to assign to each of these factors a specific and invariably applied weight"); *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019) ("None of these factors is determinative on its own, and each must be considered with an eye toward the ultimate question – [the worker's] economic dependence on or independence from the alleged employer."); *Acosta v. Paragon Contractors Corp.*, 884 F.3d 1225, 1235 (10th Cir. 2018) ("The overarching inquiry is based on the totality of the circumstances, and no single factor is dispositive."); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311-12 (11th Cir. 2013) ("The weight of each factor depends on the light it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case."); *Morrison v. Int'l Prgms. Consortium, Inc.*, 253 F.3d 5, 11 (D.C. Cir. 2001) ("No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence."); *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991) ("It is a well-established principle that the determination of the employment relationship does not depend on isolated factors . . . [N]either the presence nor the absence of any particular factor is dispositive."); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("No one of these factors is dispositive; rather, the test is based on a totality

of the circumstances. . . . Since the test concerns the totality of the circumstances, any relevant evidence may be considered, and mechanical application of the test is to be avoided."); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1534 (7th Cir. 1987) ("Certain criteria have been developed to assist in determining the true nature of the relationship, but no criterion is by itself, or by its absence, dispositive or controlling.")); *see also* 89 Fed. Reg. 1669 n.239.

In that regard, it is the 2021 Rule's predetermined and mechanical weighting of factors that is at odds with how courts have, for decades, applied the economic reality analysis. 89 Fed. Reg. 1651. And to hold that the 2024 Rule violates the APA, the Court would effectively have to conclude that the Fifth Circuit's precedent in this regard is wrong. It should decline to do so.

### 2.    The 2024 Rule is consistent with the FLSA

The 2024 Rule does not exceed the bounds of the FLSA. To the contrary, the 2024 Rule's economic reality analysis is fully consistent with the FLSA's statutory definitions. In particular, the Act's definition of "employ" to "include[] to suffer or permit to work," 29 U.S.C. § 203(g), demonstrates Congress's intent for the FLSA to broadly cover workers as employees. 89 Fed. Reg. 1667 n.216 (citing *Darden*, 503 U.S. at 326 (noting that "employ" is defined with "striking breadth"); *U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945) ("A broader and more comprehensive coverage of employees . . . would be difficult to frame); *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 665 (5th Cir. 1983) ("The term 'employee' is thus used 'in the broadest sense ever . . . included in any act.'")); *see also* 89 Fed. Reg. 1667 n.218 (citing *Pilgrim*, 527 F.2d at 1311 ("an expansive definition of 'employee' has been adopted by the courts.")). Accordingly, the 2024 Rule is consistent with the Act's text and purpose as interpreted by courts, because it focuses broadly on a worker's economic dependence on an employer, considering the totality of the circumstances and not assigning any factors a predetermined weight. 89 Fed. Reg. 1639, 1641.

On the other hand, there is no basis in the FLSA as it has been interpreted by courts for the 2021 Rule's predetermined weighting of factors. Indeed, prioritizing two "core factors," *i.e.*, the control and opportunity for profit or loss factors, over others was inconsistent with the FLSA's broad definition of the employment relationship because it narrowed the scope of the analysis for determining who is an employee. 89 Fed. Reg. 1650. Altering the focus of this analysis to two "core factors" – particularly the control factor – was also problematic in light of judicial precedent interpreting the FLSA to encompass a broader employment relationship than the common law control test, and it risked causing confusion among employers and workers applying this novel analysis which would lead to the misclassification of workers under the FLSA. 89 Fed. Reg. 1652, 1667.

**B.    The 2024 Rule Is Reasonable and Valid Under 5 U.S.C. § 706(2)(A)**

To pass muster under arbitrary-and-capricious review, the agency need only "articulate a satisfactory explanation for [the] action including a rational connection between the facts found and the choice made." *Little Sisters of the Poor v. Pennsylvania,* 140 S. Ct. 2367, 2383 (2020). Under this "deferential" standard, a court "simply ensures that the agency has acted within a zone of reasonableness," and "may not substitute its own policy judgment for that of the agency." *Prometheus Radio Project*, 141 S. Ct. at 1158; *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau*, 51 F.4th 616, 629 (5th Cir. 2022), *cert. denied,* 143 S. Ct. 981 (2023).

Moreover, when an agency changes a policy, it need not demonstrate "that the reasons for the new policy are better than the reasons for the old one," but only that "the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see Ohio v. Becerra*, 87 F.4th 759, 772 (6th Cir. 2023) (courts "do not apply greater scrutiny to agency action that

changes a prior policy"). "If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 850 (5th Cir. 2013). The party challenging an agency's action as arbitrary and capricious bears the burden of proof. *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017).

Plaintiffs' scattershot approach to their arbitrary and capricious claim fails on every count. The Department provided an exhaustive account of its reasons for rescinding the 2021 Rule and replacing it with the 2024 Rule's interpretive regulations. As the agency explained, the 2024 Rule is consistent "with the FLSA and the decades of case law interpreting it," 89 Fed. Reg. at 1660, and thereby less likely than the 2021 Rule to cause "confusion and uncertainty," *id.* at 1653, which could lead to "the misclassification of employees as independent contractors," and "result in the denial of FLSA protections," *id.* at 1656. The Department also determined that, in the event the 2024 Rule's interpretive regulations were set aside, it would still intend to rescind the 2021 Rule for the same reasons. *Id.* at 1724-25. In that event, "case law and the Department's subregulatory guidance … would provide a familiar and longstanding standard for businesses and workers." *Id.* at 1725. The agency therefore provided a "satisfactory explanation" for its decisions, which should be upheld. *Little Sisters*, 140 S. Ct. at 2383.

1. **The 2024 Rule provides robust, helpful guidance about the economic reality analysis**

Plaintiffs' arbitrary and capricious claims are predicated largely on their assertion that the 2024 Rule is "vague and amorphous," Compl. ¶¶ 91, 100, and that the 2021 Rule provided "better guidance," *id.* ¶ 93. But the 2024 Rule supplies a comprehensive interpretation, based on case law and the Department's enforcement expertise, for determining whether a worker is an employee under the FLSA. 89 Fed. Reg. 1669. It does so in easily accessible interpretive regulatory text

that can be applied to workers in any industry and that is clearer and more robust than the Department's earlier subregulatory guidance. *Id.* at 1659-60.

To be sure, the Department did not provide mechanistic instructions for analyzing the economic reality factors, because to do so would be directly contrary to case law and would limit the test's intended flexibility. *Id.* at 669-70. Rather, the factors are tools that help determine whether a worker is economically dependent on her employer for work or is in business for herself. *Id.* 1670-71 & n.243 (citing *Scantland*, 721 F.3d at 1312 ("Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'") (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 301-02 (5th Cir. 1975))); *see* 89 Fed. Reg. 1670 n.244 (citing *Pilgrim*, 527 F.2d at 301-02 (The economic reality factors "are aids – tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind.")); *see generally* 89 Fed. Reg. 1671-1721.

Plaintiffs cannot show that the 2024 Rule is more likely to cause confusion than the 2021 Rule, *see* Compl. ¶¶ 3, 30, 91, 93, 100 —let alone that the agency's contrary conclusion was *unreasonable*, as they must to prevail on this claim. *See Prometheus*, 141 S. Ct. at 1158 (the standard is "deferential" and ensures that the agency acted within a "zone of reasonableness"). Rather, plaintiffs' supposition is belied by the fact that the 2024 Rule sets forth, in interpretive regulations, the familiar multifactor economic reality test that the Supreme Court and other courts have applied for decades, while the 2021 Rule provided a novel alternative to that settled approach. 89 Fed. Reg. 1649-53. Indeed, the Fifth Circuit itself applies a "non-exhaustive factor" test that is essentially identical to the analysis in the 2024 Rule. *Compare Petroplex,* 946 F.3d at 829, 836,

*with* 29 C.F.R. § 795.110(b).  That alone should resolve this case in the Department's favor.

Similarly, plaintiffs' insistence that the totality of the circumstances analysis is too "open-ended" to allow for "certainty" and "clarity," Compl. ¶¶ 3, 5, 30, 91, misses the mark.  While such a test may not always provide "definitive guidance to those affected, it allows for flexible application to the myriad different working relationships that exist in the national economy." *McFeeley v. Jackson Street Entm't, LLC*, 825 F.3d 235, 241 (4th Cir. 2016), *cited in* 89 Fed. Reg. 1642 n.52; *see also id.* at 1642 & n.51 (citing *Pilgrim*, 527 F.2d at 1311 ("[T]he lesson taught by the Supreme Court's 1947 trilogy[3] is that any formalistic or simplistic approach to who receives the protection of this type of legislation must be rejected.")); *Brock*, 814 F.2d at 1043 ("There are no neat diagnostic formulas, only rough guidelines and checklists to determine employee status."), *cited in* 89 Fed. Reg. 1642 n.52.  The Department reasonably determined that the nuanced analysis that accompanies each factor in the 2024 Rule is more appropriate guidance than rote instructions for weighing the factors.  *Id.* at 1670.

Nor can plaintiffs seriously claim that the 2021 Rule provides "better guidance." Compl. ¶ 93.  As an initial matter, preferring one's own judgment to the agency's judgment is not a winning claim under the APA.  *See Prometheus*, 141 S. Ct. at 1158.  In any event, to apply the 2021 Rule, courts would have needed to discern what its new interpretation meant (including how it weighed and narrowed certain factors) and then to decide whether to apply it or their own standards from precedent (or some combination).  89 Fed. Reg. 1654.  These questions could have taken years of litigation in different circuits to sort out, and businesses operating nationwide would have faced the prospect of familiarizing themselves with multiple standards for determining who is an

---

[3] The trilogy the Fifth Circuit referred to was *Silk, Rutherford*, and *Bartels*, in which the Court rejected a common law control test in favor of determining employment status based on the economic realities of the working relationship.  *See Pilgrim*, 527 F.2d at 1311 n.7.

employee under the FLSA, resulting in more confusion and uncertainty. *Id.* In contrast, the 2024 Rule adopts an analytical scheme that the agency and courts have applied for decades.

The notion that the 2021 Rule could provide "better guidance," Compl. ¶ 93, is further belied by the ambiguous terms and concepts it introduced. 89 Fed. Reg. 1654. For example, the 2021 Rule left undefined what it would mean in practice for two factors to be "core factors" entitled to greater weight. *Id.* It similarly offered no guidance for how "substantial" the likelihood would be that, if the two core factors point to the same classification, that classification would be correct even if the additional factors point toward the other classification. *Id.*

Nor did the 2021 Rule specify the relative weight given to the "additional factors" as compared with the three non-"core" factors. 89 Fed. Reg. 1654. The 2021 Rule would also have collapsed some factors into each other -- contrary to decades of practice and precedent -- so that, for example, investment and initiative would have been considered only as part of the opportunity for profit or loss factor, thereby changing the way those factors have long been applied. *Id.* Once courts were faced with interpreting and deciding whether to apply these new concepts, the new weighing of the factors, and this new treatment of the factors, *id.*, substantial confusion and uncertainty might well have resulted.

Indeed, in arguing against the rescission and replacement of the 2021 Rule, plaintiffs and commentators illustrated the confusion it created. *Id.* at 1656. For example, several commenters inaccurately described the 2021 Rule as establishing a "two factor test," *id.* (citing examples), while others mistakenly assumed that non-core factors should be considered only when the two core factors pointed to opposite classification outcomes, *id.* (citing examples) & n.161. Some commenters erroneously assumed there was a reduced need to consider the non-core factors under the 2021 Rule, 89 Fed. Reg. 1656 (citing examples) & n.162, and even equated the 2021 Rule's

economic reality test with a common law control test, *id.* at 1656 (citing examples) & n.163. Plaintiffs themselves misstate the analysis in the 2021 Rule, claiming that "if the two key factors give a clear answer, that is the end of the analysis." Compl. ¶ 32.   Such confusion could be expected, given the 2021 Rule's novel analysis, which serves to reinforce the reasonableness of the Department's forecast that the 2021 Rule could have resulted in misapplication of the economic reality test.   89 Fed. Reg. 1656.

> ## 2.    The 2024 Rule properly rejected the 2021 Rule's singling out of two "core factors" as "most probative"

Plaintiffs allege that the 2024 Rule "abandons the key factors most probative" of employee status, and that the 2021 Rule instead embodies Supreme Court and Fifth Circuit precedent. Compl. ¶¶ 90-91.   As demonstrated above, however, the 2021 Rule's singling out of two "core factors" conflicts with judicial precedent and the expansive definition of "employ" under the FLSA.   Plaintiffs' reliance on *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983), and *Mitchell v. John R. Crowley & Bro., Inc.*, 292 F.2d 105 (5th Cir. 1961), for their assertion, *see* Compl. ¶¶ 26-28, 31, is misplaced for at least four reasons.

First, plaintiffs misconstrue *Castillo* and *Mitchell* (both of which apply a non-exhaustive, multi-factor economic reality analysis) as standing for the proposition that "key" factors of the economic realty test can properly be singled out as "critically significant," and therefore as "predominat[ing]," Compl. ¶¶ 26, 31, just as two "core factors" were deemed "most probative" in the 2021 Rule, *see id.* ¶¶ 39, 91.   However, in neither case did the Fifth Circuit single out any two factors and deem them "predominant."   *See id.* ¶ 31.   In both cases, the Fifth Circuit discussed two factors as having substantial "significance" regarding the determination of "economic reality" primarily in order to counter-balance the employers' undue emphasis on the "control" factor in arguing that the workers in question were not employees under the FLSA.   *See Castillo*, 704 F.2d

at 190 ("[F]ocusing on selected and isolated control factors . . . loses sight of the circumstances of the whole activity."); *Mitchell*, 292 F.2d at 108 (The employers "emphasize the time-worn rubric on right to control the manner and means of work," but the control test is "indecisive[]" and is "but one of the factors only.").[4]  Thus, contrary to plaintiffs' suggestion, the Fifth Circuit did not single out any "key" factors as "most probative," and the 2024 Rule cannot have "abandon[ed] the key factors"—as no such factors exist under Fifth Circuit precedent.  *See* Compl. ¶ 91.

Second, one of the two alleged "factors" mentioned in *Mitchell* and *Castillo*, *i.e.*, whether the individual is "'in business for himself,'" *Castillo*, 704 F.2d at 190-91 (quoting *Mitchell*, 292 F.2d at 108); Compl. ¶¶ 26, 28, is not actually a factor at all under *Silk* and its progeny.  Rather, the determination of whether an individual is "in business for himself" is just another way of describing the overarching determination of "economic dependen[ce]," *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998); *Mednick*, 508 F.2d at 301-02 (stating that the concept of "dependen[ce] . . . has also been put in terms of whether the individual is 'in business for himself'").  In other words, whether a worker is in business for himself is a "determinative question" whose "answer . . . lies in the 'economic realities' of the situation." *Castillo*, 704 F.2d at 192-93; *see also Mitchell*, 292 F.2d at 109 ("The solution [to the question of whether a worker is in business for himself] is . . . to be found in terms of 'the 'economic reality'

---

[4] Control predominates the common law analysis of the employment relationship.  But as the Supreme Court has repeatedly noted, the FLSA adopted a broader definition of employment than existed at the common law.  *See, e.g.*, 89 Fed. Reg. 1640 (citing *U.S. v. Rosenwasser*, 323 U.S. 360, 361, 363 n.3 (1945)); *see also Pilgrim*, 527 F.2d at 1311 ("The common law concepts of 'employee' and 'independent contractor' have been specifically rejected as determinants of who is protected by the [FLSA].").  The decisions in *Mitchell* and *Castillo* properly looked beyond the control factor to examine the other criteria and were therefore consistent with the FLSA's approach to the economic reality analysis.

rather than 'technical concepts' (as) the test of employment.'") (quoting *Goldberg*, 366 U.S. at 33).

Moreover, to determine whether the worker was "in business for himself" or was economically dependent on the employer for work, the Fifth Circuit in *Mitchell* and *Castillo* examined the *Silk* factors to analyze economic reality. *See Castillo*, 704 F.2d at 192 (examining "control," "opportunity . . . to make any profit or loss," "investment," and permanency); *Mitchell*, 292 F.2d at 109 (examining the rate of pay, whether the worker was free to furnish services to others, the permanency of the relationship, and the worker's investment in a "flashlight, bicycle, and gun"). Thus, contrary to plaintiffs' claim, Compl. ¶¶ 26-28, 31, the 2024 Rule is consistent with *Mitchell* and *Castillo*, as well as subsequent cases in the Fifth and all other circuits, that analyze economic reality not based on predetermined "key" factors, but by examining the totality of the circumstances to determine economic dependency. *See Hobbs*, 946 F.3d at 829; *Parrish*, 917 F.3d at 380; *Herman Express*, 161 F.3d at 303; *Brock*, 814 F.2d at 1043; *Pilgrim*, 527 F.2d at 1311; *Mednick*, 508 F.2d at 300.

Third, *Mitchell* and *Castillo* actually undercut plaintiffs' argument that the 2021 Rule's "core factor" of "the nature and degree of worker's control over work" should "predominate" over the other factors, Compl. ¶ 31, 39, because the Fifth Circuit in both of those cases found that *too much* weight had been afforded to the "time-worn rubric" of "right to *control* the manner and means of work." *Mitchell*, 292 F.2d at 108 (emphasis added); *see also Castillo*, 704 F.2d at 190 ("[F]ocusing on selected and isolated *control* factors . . . loses sight of the circumstances of the whole activity.") (emphasis added). *Mitchell* and *Castillo* are therefore consistent with the approach in the 2024 Rule that the control factor should be afforded no greater weight as a predetermined matter than any other factor in the economic reality test. *See* 89 Fed. Reg. 1652

("[E]levating the importance of control in every FLSA employee or independent contractor analysis brings the 2021 Rule closer to the common law control test that courts have rejected when interpreting the Act."); 89 Fed. Reg. 1692 ("[C]ontrol should be analyzed in the same manner as every other factor, rather than take an outsized role . . . .").

Fourth, plaintiffs suggest that because the Court in *Castillo* found that two factors "emerged as critically significant" in determining economic dependence under the economic reality test, Compl. ¶ 26, the 2021 Rule properly "found, similarly to the Fifth Circuit in *Castillo*, that . . . two factors . . . predominate," *id.* ¶ 31. However, the Fifth Circuit did not endorse an approach that independently preselects particular economic reality factors, unilaterally declares them "most probative," and accords them greater weight in every situation and case, which is what plaintiffs advance and the 2021 Rule instructed. In any event, the "key" factors that the Fifth Circuit allegedly singled out in *Mitchell* and *Castillo* -- "how specialized the nature of the work is" and "whether the individual is in business for himself," *Castillo*, 704 F.2d at 190-91; *see* Compl. ¶ 26 -- are not "similar[]" to, *see id.* ¶ 31, and in fact are completely different from, the two "core factors" in the 2021 Rule -- the "nature and degree of worker's control over work" and the "worker's opportunity for profit or loss," *id.* Thus, even if the Fifth Circuit in *Castillo* had recognized two "predomina[nt]" factors," *see id.*, (which it did not), the decision would not have justified the 2021 Rule's designation of two entirely different "core factors" as "most probative," *see id.* ¶¶ 91, 93.

### 3. The 2024 Rule properly articulates the "integral" factor in its economic reality analysis

Plaintiffs mistakenly allege that the 2024 Rule's inclusion of whether the work performed is "an integral part of the employer's business" as one factor comprising the economic reality analysis is not consistent with Supreme Court or Fifth Circuit authority. Compl. ¶¶ 40-46. But

while the Fifth Circuit does not expressly enumerate the "integral part" factor as one of the factors that guides its economic reality analysis, the Fifth Circuit has in fact addressed integrality as an additional relevant factor. *See Hobbs*, 946 F.3d at 836 (considering whether work was "an integral part" of the business and noting that "[o]ther circuits, such as the Sixth and Tenth Circuits, include this consideration as an enumerated sixth factor in the economic realities test"); *see also Mednick*, 508 F.2d at 300 (considering whether work was "an integrated part" of the business). Moreover, every other court of appeals that has decided an FLSA case involving alleged independent contractors has included the "integral part" factor among the list of enumerated economic reality factors, 89 Fed. Reg. 1642 n.57, and the Supreme Court in *Silk* explicitly considered the fact that the workers in question were an "integral part" of the business to be relevant to the economic reality analysis, *Silk*, 331 U.S. at 716. The Department therefore reasonably included this factor in the 2024 Rule.

There is also no merit to plaintiffs' allegation that the "integral part" factor as stated in the 2024 Rule is not consistent with the principles in *Rutherford*, which described the workers as "part of the integrated unit of production," the formulation used in the 2021 Rule. Compl. ¶ 43. The Supreme Court's decision in *Silk*, issued contemporaneously with *Rutherford*, used the "integral part" formulation as contained in the 2024 Rule, 331 U.S. at 716, and none of the circuits listing integrality as an enumerated factor uses the term "integrated unit." 89 Fed. Reg. 1707. The Department reasonably determined that a rigid approach to the specific phrasing in *Rutherford*, *see* Compl. ¶ 43, did not reflect Supreme Court or circuit court precedent. 89 Fed. Reg. 1707.

In addition, the 2024 Rule's integrality factor considers whether the work is "critical, necessary, or central to the employer's principal business," which better reflects economic reality case law and is more consistent with the totality of the circumstances approach to determining

whether a worker is an employee or an independent contractor than the 2021 Rule's "integrated unit of production" framing.  89 Fed. Reg. 1707.  What matters most under the 2021 Rule is "the extent of [a worker's] integration [into a business's production process] rather than the importance or centrality of the functions performed" by the worker.  87 Fed. Reg. 62253, *cited in* 89 Fed. Reg. 1707 n.456.  But because courts understand the integrality factor as being focused on the importance or centrality of the functions performed, 89 Fed. Reg. 1707 n.462 (citing 87 Fed. Reg. 62254 (citing *Silk*, 331 U.S. at 716)), the Department reasonably did not use the "integrated unit" terminology and restored the integrality factor as it has been consistently understood by the courts, 89 Fed. Reg. 1707.

### 4.    The Department properly considered alternatives to rescinding the 2021 Rule

Plaintiffs claim that the Department did not consider alternatives "within the existing ambit of the 2021 Rule – like monitoring its effects . . . ." by gathering more "data."  Compl. ¶ 94.  In fact, however, the Department did consider – and reject – the option of waiting for a longer period to monitor the effects of the 2021 Rule, reasonably believing that the potential confusion and disruption from the 2021 Rule outweighed any potential benefit from such an approach.  89 Fed. Reg. 1660 n.174 (citing 87 Fed. Reg. 62219).  In proceeding with the final 2024 Rule, the Department drew on extensive experience in interpreting and enforcing the FLSA and its consideration of the comments received.  89 Fed. Reg. 1660.  "An agency's reliance on 'its own and its staff's experience, the many comments received, and other evidence, in addition to [] limited and conflicting empirical evidence,' meets APA requirements."  89 Fed. Reg. 1660 n.175 (quoting *Chamber of Commerce*, 412 F.3d at 142).  The Department's belief that the 2024 Rule provides more consistency for stakeholders than the 2021 Rule, *see* 89 Fed. Reg. 1660, was well founded.  *See supra* Section II(B)(1) (describing confusion evidence in the comments).

Moreover, the Department considered four additional alternatives to rescinding and replacing the 2021 Rule.  89 Fed. Reg. 1660-64.  In response to commenters, 89 Fed. Reg. 1663, and consistent with OMB guidance, 89 Fed. Reg. 1663 n.190 (citing OMB Circular A-4), the Department reconsidered and again rejected two of those alternatives – issuing guidance adopting either the common law test or the ABC test[5] for determining FLSA employee or independent contractor status – as inconsistent with the FLSA or judicial precedent.  89 Fed. Reg. 1660-61 (citing 87 Fed. Reg. 62230).  The Department rejected a third alternative -- partial rescission of the 2021 Rule by removing the problematic "core factor" analysis -- because the 2021 Rule's descriptions of the five economic reality factors were otherwise in tension with judicial precedent and longstanding Departmental guidance, and improperly limited the consideration of potentially relevant and probative facts.  89 Fed. Reg. 1661.  Hence, the Department determined that only a complete rescission was adequate to provide clear, affirmative regulatory guidance consistent with case law and consistent with the text and purpose of the Act as interpreted by courts.  89 Fed. Reg. 1661.

The Department also rejected the fourth alternative of rescinding the 2021 Rule and replacing it with subregulatory guidance, because it determined that a new rule would supply in-depth guidance in accordance with circuit case law, permit the Department formally to consider a range of views collected through the notice-and-comment process, and potentially increase

---

[5] The ABC test is used in some states to determine whether a worker is an employee or an independent contractor under state law.  For instance, under California's three-factor ABC test, a worker is generally presumed to be an employee, and a company that hires the worker must prove that the worker is free from the company's control and direction; performs work outside of the usual course of the company's business; and is customarily engaged in an independently established trade of the same nature as the work performed for the company for the worker to be considered an independent contractor.  *See, e.g., Dynamex Operations W., Inc.* v. *Superior Court,* 416 P.3d 1 (Cal. 2018); Assembly Bill 5, Ch. 296, 2019–2020 Reg. Sess. (Cal. 2019) (codifying the ABC test articulated in *Dynamex*).

judicial consistency regarding the classification of workers.  89 Fed. Reg. 1661.  Indeed, the 2021

Rule similarly rejected the reliance on subregulatory guidance as an alternative.  89 Fed. Reg.

1663 n.199.  All of these alternatives were considered and reasonably rejected.

> **5.      The Department properly considered stakeholder reliance on the 2021 Rule**

Finally, plaintiffs contend that the Department improperly found "unpersuasive" claims of

stakeholder reliance on the 2021 Rule.  Compl. ¶¶ 9, 95.  Aside from the complete dearth of

evidence that plaintiffs actually relied on the 2021 Rule, an examination of the timeline for the

2021 Rule reveals that the Department's conclusion was reasonable.  Even before the 2021 Rule's

effective date, the Department identified concerns with the 2021 Rule and issued rules to delay its

effective date and then withdraw it.  89 Fed. Reg. 1660.  Shortly afterward, the Department

announced a new rulemaking on employee and independent contractor classification under the

FLSA. 89 Fed. Reg. 1660 n.172.  Given that stakeholders were on notice about the Department's

concerns with the 2021 Rule before its effective date, and that the status of the 2021 Rule was in

question shortly after its publication, the claim that plaintiffs relied on the 2021 Rule in classifying

workers and restructuring their businesses in reliance on the 2021 Rule is implausible at best.

> **C.      The Equitable Remedy of an Injunction Is Not Available Because Plaintiffs Have Shown No Irreparable Harm**

Even if the Court were to conclude that plaintiffs have met their standing burden to pursue

injunctive relief against the Department, which they have not, *see* section I(A) above, plaintiffs

still could not prevail in their effort to enjoin the Department here because they have not shown

enough harm of the requisite significance, certainty, and irreparability to warrant injunctive relief.

"The equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury, a

requirement that cannot be met where there is no showing of any real or immediate threat that the

plaintiff will be wronged again—a likelihood of substantial and immediate irreparable injury."

*Lyons*, 461 U.S. at 111; *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiffs' allegations of irreparable harm are limited to assertions that they "will" incur substantial financial injury with "no guarantee" of eventual recovery. Compl. ¶¶ 54, 60, 77, 86. Aside from the fact that financial injury is ordinarily not considered irreparable harm, *see Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011), these speculative and unsubstantiated assertions do not "demonstrate that irreparable injury is *likely* in the absence of an injunction," *Winter*, 555 U.S. at 22, especially given that prior to 2021, judicial precedent that is identical to the essential terms of the 2024 Rule have governed plaintiffs since they started in business without alleged harm. Since plaintiffs have failed to show any "real or immediate" threat of injury, *Lyons*, 461 U.S. at 111, they have not met their burden of demonstrating an entitlement to injunctive relief against the Department.

*    *    *

To be valid under the APA, the 2024 Rule need only meet "minimum standards of rationality," *Luminant*, 714 F.3d at 850, which it far exceeds. The Department responded to concerns raised in some 55,400 comments submitted by a diverse array of stakeholders on proposed rule, modified the final Rule's regulatory text in response to those comments, 89 Fed. Reg. 1646, and provided a comprehensive and well substantiated explanation of the Department's rationale for making the determinations it did, *see* 89 Fed. Reg. 1638-1743. The Department reasonably concluded that an analysis that has been applied for over 70 years by courts, employers, workers, and Department enforcement personnel, and is aligned with the breadth of the relevant statutory definitions and binding judicial precedent is faithful to the FLSA and also familiar to the regulated community, workers, and those enforcing the Act. *Id.* at 1668-69. To hold that the 2024 Rule violates the APA, the Court would effectively have to conclude that the Fifth Circuit's own

cases determining employee status under the FLSA were wrong. Once again, it should decline to do so.

Moreover, plaintiffs' difference of opinion cannot render the Department's conclusion irrational, nor was the Department obligated to adopt plaintiffs' opinion in its Rule. Rather, agencies must simply demonstrate that they "'clearly thought about the [commenters'] objections'" and offered "'reasoned replies.'" *Huawei Tech. USA, Inc. v. FCC*, 2 F.4th 421, 450 (5th Cir. 2021) (internal citation omitted). The agency may "weigh[] the evidence differently . . . and reach[] contrary but reasonable policy conclusions." *Id.* at 451. That is precisely what the Department did here.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or alternatively for summary judgment should be granted.

Dated: May 20, 2024                    Respectfully submitted,

                                       BRIAN M. BOYNTON
                                       Acting Assistant Attorney General

                                       JULIE STRAUS HARRIS
                                       Assistant Branch Director

                                       */s/ Lisa A. Olson*
                                       LISA A. OLSON
                                       Senior Trial Counsel
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street N.W., Room 12200
                                       Washington, D.C. 20005
                                       (202) 514-5633
                                       Lisa.olson@usdoj.gov

                                       *Counsel for Defendants*