## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, <br><br> Defendants. | **Case No. 2:24-cv-00347** <br><br> Section L <br><br> District Judge Fallon <br><br> Magistrate Judge Dossier |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT

### INTRODUCTION

This case involves the same federal agency—Department of Labor—completely reversing course on significant regulatory action under the Fair Labor Standards Act ("FLSA") on how employers should classify independent contractors and employees. Simply put, the 2024 Rule is unlawful under the Administrative Procedure Act ("APA"), and the DOL Defendants' motion to dismiss or alternatively for summary judgment (ECF No. 32) should be denied.

The DOL concedes that the 2024 Rule could adversely affect in a material way a sector of the economy. And the 2024 Rule violates the APA because it is arbitrary

1

and capricious and outside of DOL's statutory authority. Indeed, in promulgating the 2024 Rule, the DOL considered only the binary choice of whether to retain or rescind the 2021 Rule, without also considering less disruptive alternatives. DOL also failed to consider employers' reliance interests on the 2021 Rule.

Plaintiffs filed a motion for a preliminary injunction in this Court, seeking to set aside the DOL's 2024 Rule, which took effect approximately three months ago. The new 2024 Rule rescinded the existing 2021 Rule that Plaintiffs had relied upon for three years when classifying their independent owner-operator trucking labor.

However, this Court denied Plaintiffs' motion for a preliminary injunction to set aside the 2024 Rule because it found that they did not show that they would suffer an immediate threat of harm from the 2024 Rule. Plaintiffs appealed this Court's ruling to the Fifth Circuit Court of Appeals and filed its opening brief on June 17, 2024. The DOL Defendants' response brief is due at the Fifth Circuit on July 17, 2024, and the Plaintiffs' reply brief deadline is August 7, 2024.

This Court should deny the Defendants' pending motion because it is wholly without merit. The Plaintiffs have standing because they have suffered significant financial injury with no guarantee of eventual recovery. The 2024 Rule caused their substantial financial injury, and the Court may redress their injury by issuing injunctive and declaratory relief. Moreover, Plaintiffs' APA claims are viable because the 2024 Rule is arbitrary and capricious and was promulgated by the DOL outside of its statutory authority, and it should be set aside.

## FACTUAL BACKGROUND

### A. DOL's 2021 Rule

In January 2021, DOL issued a classification rule establishing when a worker qualifies as either an employee or independent contractor. *See* 86 Fed. Reg. 1168. DOL promulgated the 2021 Rule "to promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." *Id.*

The DOL's 2021 Rule reconciled decades of inconsistency and set forth a formal interpretation of the traditional standards established in *United States v. Silk*, 331 U.S. 704 (1947), to provide clarity to employers when classifying employees and independent contractors. ROA.95.[1] Specifically, the 2021 Rule found, similarly to the Fifth Circuit in *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983), that in practice two factors predominate in determining whether a person should be considered an employee or an independent contractor: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss. ROA.95.

Under the 2021 Rule, if these two key factors give a clear answer, that is the end of the analysis. ROA.95. But if those factors point in disparate directions, then there are three additional factors for a court to consider: (3) the amount of skill required for the work; (4) the degree of permanence of the working relationship; and (5) whether the work is part of an integrated unit of production. ROA.96.

---

[1] The Record Excerpts filed with Plaintiffs' opening brief at the Fifth Circuit is attached hereto as **Exhibit 1**, and the "ROA" designation used in their appellate brief for citations is also used in this response to cite to the record.

**B. DOL's 2024 Rule**

On January 10, 2024, the DOL issued and published in the Federal Register the new 2024 Rule, effective March 11, 2024, which rescinded the 2021 Rule. *See* 89 Fed. Reg. 1638. DOL promulgated the 2024 Rule "to rescind and replace the 2021 IC Rule."[2] *Id*. at 1639.

The 2024 Rule expressly states that the new Rule "is a 'significant regulatory action' under section 3(f)(1) of Executive Order 12866." *Id*. at 1725. A "significant regulatory action" under 3(f)(1) means a rule that is likely to: "(1) have an annual effect on the economy of $200 million or more, or adversely affect in a material way a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or state, local, or tribal governments or communities." *Id*. "Total regulatory familiarization costs to businesses in Year 1 [of the 2024 Rule] are estimated to be $148,749,744 ($52.80 × 1 hour × 2,817,230) in 2022 dollars." *Id*. at 1733.

Unlike the 2021 Rule, the 2024 Rule prescribes a "totality of the circumstances" analysis, including six nonexclusive factors that a court could look to when determining employee status: (1) workers' opportunity for profit or loss depending on managerial skill; (2) investments made by worker and employer; (3) degree of permanence of the work relationship; (4) nature and degree of businesses' control over the worker; (5) the extent to which work performed is an integral part of the

---

[2] DOL refers to the 2021 Rule as the "2021 IC Rule." *See* 89 Fed. Reg. 1638.

potential employer's business; and (6) whether the worker uses specialized skills in performing the work. *Id*. at 1640.

The DOL claimed that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." *Id*. at 1660. The DOL did acknowledge that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding and replacing the 2021 Rule. *Id*. But despite this acknowledgment and recognition that the 2024 Rule is a "significant regulatory action," with costs to businesses in Year 1 of the Rule projected to be $148,000,000, the DOL said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." *Id*. at 1660, 1725, and 1733.

## C. Plaintiffs and Their Injuries

*Frisard's Transportation, L.L.C.*

Since 2014, Plaintiff Frisard's Transportation, L.L.C. has been a family-owned trucking company specializing in transporting finished goods to stock the shelves of supermarkets and other retail stores, among other cargo, that relies on independent contracting labor as a core necessity of its business. ROA.126-27.

Frisard's is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule. ROA.127. Frisard's has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent-contracting labor. ROA.127. Frisard's has gross sales of more than $500,000 per year, frequently hauls goods across state

lines, and frequently employs independent contractors to drive trucks to fulfill Frisard's clients' needs. ROA.127.

Frisard's transports cargo throughout the southern and eastern United States, from Texas and Nebraska to Maryland and Florida, wherever its customers need cargo delivered. ROA.127. Frisard's contracts with more than thirty owner-operated independent drivers who own their own trucks, decide which loads to carry or not, and who are paid a flat percentage of shipping fee for a given load, plus reimbursable expenses such as fuel which are passed on to the client. ROA.127. Frisard's utilizes only independent owner operators to make deliveries and employs no in-house drivers. ROA.127. By contrast, a related but separate company, Frisard's Trucking Co., employes a staff of in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.127.

Frisard's use of independent owner-operators is beneficial to both Frisard's itself, which is able to operate more efficiently and reduce excess costs, and to Frisard's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.127-28.

Frisard's will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.128. For example, the 2024 Rule threatens to upend Frisard's business operations, increasing costs, depriving

truckers of the opportunity to operate independently within their own business, and potentially driving many of the independent contractors Frisard's relies on out of business, or into different lines of business other than Frisard's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.128.

*Louisiana Motor Transport Association, Incorporated*

Plaintiff Louisiana Motor Transport Association, Incorporated is a non-profit corporation founded in 1939, and it represents 388 Louisiana trucking and related industry companies. ROA.131.

LMTA's mission is to protect and promote Louisiana's trucking industry. ROA.131. Its members include every type of motor carrier in Louisiana, including related and exempt, intrastate and interstate, and for-hire and private. ROA.131. LMTA champions the trucking industry and advocates for its members on laws and regulations in Baton Rouge, La., and in Washington, D.C. ROA.131.

LMTA's members are subject to the FLSA, the 2021 Rule, and the 2024 Rule, and they rely on independent contracting labor as a core necessity of their businesses. ROA.131. Moreover, LMTA's members have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent-contracting labor. ROA.131. LMTA's members' use of independent owner-operators benefits both employer members, who are able to operate more efficiently and reduce excess costs, and to members' independent contractors, who assume more

7

responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.131.

LMTA's members will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.131. For example, the 2024 Rule threatens to upend LMTA's employer members' business operations, increase costs, and deprive independent owner-operator truckers of the opportunity to work independently within their own business. ROA.131. Additionally, the 2024 Rule could potentially drive many of the independent contractors LMTA's employer members rely on out of business, or into different lines of business other than LMTA's members' businesses, depriving them of needed manpower to deliver cargo wherever their clients need it delivered. ROA.132.

*A & B Group, Inc.*

Plaintiff A & B Group, Inc. is a trucking company in operation since 1995, specializing in delivering liquid and dry bulk long-haul services and transporting cargo to all 50 U.S. states and Canada. ROA.135.

A&B is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.135. A&B has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.135. A&B has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.135.

A&B contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.135. A&B also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.135. A&B's use of independent owner-operators is beneficial to both A&B itself, which is able to operate more efficiently and reduce excess costs, and to A&B's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.135.

A&B will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.136. For example, the 2024 Rule threatens to upend A&B's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors A&B relies on out of business, or into different lines of business other than A&B's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.136.

*Northlake Moving and Storage, Inc.*

Plaintiff Northlake Moving and Storage, Inc. is a trucking company that has operated for over 40 years, specializing in transportation and storage of household goods, office furniture, and special products, and it transports cargo to 48 U.S states. ROA.138.

9

Northlake is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.139. Northlake has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.139. Northlake has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.139.

Northlake contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.139. Northlake also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.139. Northlake's use of independent owner-operators is beneficial to both Northlake itself, which is able to operate more efficiently and reduce excess costs, and to Northlake's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.139.

Northlake will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.139. For example, the 2024 Rule threatens to upend Northlake's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Northlake relies on out of business, or

into different lines of business other than Northlake's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.139-40.

*Triple G. Express, Inc.*

Plaintiff Triple G. Express, Inc. is a family-owned trucking company that has operated since 1985 and is an intermodal carrier serving the Port of New Orleans Markets. ROA.142. Triple G transports cargo throughout the Southeastern United States, including Louisiana, Texas, Mississippi, and Alabama, wherever their clients and customers need cargo delivered. ROA.143.

Triple G is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.143. Triple G has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.143. Triple G has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.143.

Triple G contracts with 100 independent drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.143. Triple G utilizes only independent owner-operators to make deliveries and employs no in-house drivers. ROA.143. Triple G's use of independent owner-operators is beneficial to both Triple G's itself, which is able to operate more efficiently and reduce excess costs, and to

Triple G's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.143.

Triple G will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.144. For example, the 2024 Rule threatens to upend Triple G's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Triple G relies on out of business, or into different lines of business other than Triple G's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.144.

## LEGAL STANDARD

A party may attempt to defeat a claim by asserting in a motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Summary judgment may be entered only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Texas v. Rettig*, 987 F.3d 518, 526 (5th Cir. 2021) (citing Fed. R. Civ. P. 56(a)).

## ARGUMENT

### I. This Court has subject matter jurisdiction over the case because Plaintiffs have standing, and their claims under the APA should not be dismissed.

This Court has subject matter jurisdiction over the case because Plaintiffs have Article III standing, and their APA claims should not be dismissed. Plaintiffs have standing because: (1) they will incur substantial financial injury with no guarantee

of eventual recovery as a result of the 2024 Rule; (2) the 2024 Rule caused the Plaintiffs' substantial financial injury; and (3) an injunction setting aside the 2024 Rule or declaratory judgment declaring the 2024 Rule invalid and contrary to law under the APA would redress Plaintiffs' injuries.

### A. Plaintiffs have standing because they will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule.

Plaintiffs have shown that they have suffered a concrete injury because they will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule that went into effect in March of this year.

The minimum threshold for establishing Article III standing only requires that a plaintiff show: (1) an injury-in-fact that is concrete, particularized, and imminent; (2) fairly traceable to defendant's conduct; and (3) would be redressed by a favorable court decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). A plaintiff need not "demonstrate that it is literally certain that the harms [it] identif[ies] will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). Nor does the Article III standing analysis require a plaintiff to establish that such harms are "clearly impending." *Id.* at n.6.

"[S]ubstantial financial injury" may be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016); *Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). Moreover, "complying with a regulation later held invalid almost always produces irreparable harm of nonrecoverable compliance costs." *Texas v.*

13

*EPA*, 829 F.3d at 433. Additionally, an agency's sovereign immunity bars recovery of costs. *See Wages v. White Lions Invs., L.L.C.*, 16 F.4th 1130, 1142 (5th Cir. 2021).

Here, in their Memorandum the DOL Defendants doth protest too much by breathlessly arguing the Plaintiffs have failed to show that they have suffered a concrete injury to confer Article III standing. ECF No. 32-1 at 13-15. To support their spurious argument, they said, "But the Complaint fails to allege any actual or 'certainly impending' injury to plaintiffs, or to present any specific facts to show it." *Id*. at 14. Nothing could be further from the truth.

First, the record reflects that all the Plaintiffs submitted unopposed declarations stating that they would incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.128, 131, 136, 139, and 144.

Second, the DOL Defendants do not contest that Plaintiffs will incur financial injury and *concede in the 2024 Rule itself* that costs to employers in the new Rule's first year were estimated to be $148,000,000. 89 Fed. Reg. at 1733.

Third, the DOL's sovereign immunity bars Plaintiffs' ability to recover costs. *See Wages*, 16 F.4th at 1142.

> **B. Plaintiffs have standing because the 2024 Rule caused their substantial financial injury, and this Court may redress their injury by issuing injunctive and declaratory relief.**

Plaintiffs have satisfied the traceability and redressability prongs of Article III standing because the 2024 Rule—which rescinded the 2021 Rule—caused their substantial financial injury, and this Court may redress the injury by issuing injunctive and declaratory relief and setting aside the 2024 Rule.

14

The DOL Defendants argue that Plaintiffs failed to show their substantial financial injury can be traced to the DOL's 2024 Rule or that the Court may redress their injury. ECF No. 32-1 at 15-16. But their argument falters once again. Plaintiffs rely on independent contracting labor as a core necessity of their business, and they have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent contracting labor. ROA.126-27, 131, 135, 139, and 143. Thus, by promulgating the 2024 Rule and rescinding the 2021 Rule, Plaintiffs' substantial financial injury may be traced back directly to the DOL Defendants. And this Court may redress Plaintiffs' financial injury by setting aside the 2024 Rule and thus restoring the 2021 Rule. *See Lujan,* 504 U.S. at 560-61.

### C. Because the Plaintiffs have standing, there is a case and controversy under the APA warranting declaratory relief.

Because the Plaintiffs have established that they have Article III standing, there is a case and controversy under the APA, which further warrants declaratory relief.

The DOL Defendants continue to press their feeble Article III standing argument and allege that, in addition to failing to establish standing to support injunctive relief, Plaintiffs' declaratory judgment claim must also fail since there is no "substantial controversy." ECF No. 32-1 at 17. DOL feigns confusion over Plaintiffs' request for declaratory relief suggesting "nothing in plaintiffs' business practices has actually changed as a result of the 2024 Rule." *Id*.

But this is simply not accurate. As discussed, Plaintiffs have shown they have a substantial financial injury caused by the 2024 Rule which this Court may redress. Moreover, Plaintiffs provided examples that the 2024 Rule threatens to upend their

business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the independent contractors they rely on out of business, or into different lines of business, depriving Plaintiffs of needed manpower to deliver cargo wherever their clients need it delivered. ROA.128, 132, 136, 139-40, and 144.

**II. Judgment should not be entered for Defendants.**

Next, the Defendants argue "alternatively" that judgment should be entered in their favor. ECF No. 32-1 at 17. But much like their primary misguided standing argument, their secondary "alternative" argument also fails because they failed to show why judgment should be entered in their favor. Indeed, the 2024 Rule which rescinded the 2021 Rule on which the Plaintiffs have relied for three years is arbitrary and capricious and outside of DOL's statutory authority.

**A. The 2024 Rule is arbitrary and capricious and violates the APA.**

The 2024 Rule that rescinded the 2021 Rule is arbitrary and capricious and violates the APA.

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U. S. 788, 796 (1992). Under the APA, a person wronged by federal agency action "is entitled to judicial review thereof." 5 U.S.C. § 702. The APA further allows judicial review for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An agency must defend its actions based on contemporaneous reasons it gave when it acted and may not

engage in post hoc rationalizations. *See generally DHS v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020).

Specifically, where, as here, "an agency rescinds a prior policy[,] its reasoned analysis must consider the alternatives that are within the ambit of the existing policy." *Id.* at 1913 (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)). When changing course, an agency must account for "serious reliance interests" its "longstanding policies may have engendered." *Regent*s, 140 S. Ct. at 1913. Indeed, such a policy change is colloquially known as the "surprise switcheroo" doctrine. *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 189, n. 6 (5th Cir. 2023) (citing *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019); *Env't Integrity Project v. EPA*, 425 F.3d 992, 996 (D.C. Cir. 2005)). And failure to consider "relevant factors" will render "an agency's decreed result" unlawful. *Michigan v. EPA*, 576 U.S. 743, 750 (2015). These requirements ensure that an agency has engaged in "reasoned decisionmaking." *Id.*

To be sure, agencies are "free to change their existing policies," as long as "they provide a reasoned explanation for the change." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (citing *Nat'l. Cable & Telecomms. Ass'n. v. Brand X Internet Servs.*, 545 U.S. 967, 981-82 (2005)); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). But the agency must "show that there are good reasons for the new policy." *Encin*o, 579 U.S. at 222 (citing *Fed. Commc'ns Comm'n v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).

17

The APA forbids an agency from acting in an arbitrary and capricious manner in promulgating rules. *See* 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs.*, 463 U.S. at 43. A court must "ensure that the agency 'examined the relevant data and articulated a satisfactory explanation for its action.'" *Sierra Club v. EPA*, 939 F.3d 649, 664 (5th Cir. 2019) (quoting *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 723 (5th Cir. 2013)).

An agency's failure to consider alternatives within the ambit of existing policy is fatal to an agency's new policy because an agency thus fails to "consider important aspects of the problem before [it]," and that "omission alone causes agency action to be arbitrary and capricious." *Motor Vehicle Mfrs.*, 463 U.S. at 43. And an agency must assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns. *Regents*, 140 S. Ct. at 1915.

By failing to consider alternatives within the ambit of the existing 2021 Rule, DOL failed to meet these established standards under the APA. As discussed below, the 2024 Rule is arbitrary and capricious under the APA because DOL: (1) considered only the binary choice of whether to retain or rescind the 2021 Rule,

without considering less disruptive alternatives; and (2) failed to consider employers' reliance interests on the 2021 Rule.

*First*, the 2024 Rule is arbitrary and capricious because DOL considered only the binary choice of whether to retain or rescind the 2021 Rule without considering less disruptive alternatives.

"In short, agency action is arbitrary and capricious when the agency considers only the binary choice of whether to retain or rescind a policy, without also 'considering less disruptive alternatives.'" *Coal. for Workforce Innovation v. Walsh*, 2022 U.S. Dist. LEXIS 68401, *49 (E.D. Tex. Mar. 14, 2022) (citing *Texas v. Biden*, 20 F.4th 928, 992 (5th Cir. 2021) (quoting *Wages v. White Lions Invs., L.L.C.*, 16 F.4th 1130, 1139 (5th Cir. 2021))).

Here, the 2024 Rule acknowledges that DOL promulgated the 2024 Rule "to rescind and replace the 2021 IC Rule." 89 Fed. Reg. at 1639. DOL made clear in the 2024 Rule itself that it wanted to switch course, burn the 2021 Rule to the ground, and start over. In other words, the 2024 Rule is clear that DOL began with its conclusion—rescind and replace the 2021 Rule—then worked backwards in unreasoned and haphazard fashion in an attempt to connect the dots to muster support showing why the 2021 Rule should be rescinded. This is not "reasoned decisionmaking." *Michigan,* 576 U.S. at 750.

The 2024 Rule provides conclusory and unsupported allegations on why the 2021 Rule needed to be rescinded, but does not offer any actual analysis on how the DOL might have promulgated a less disruptive new rule. The 2024 Rule does mention

four "alternatives" to rescinding the 2021 Rule. 89 Fed. Reg. at 1660. But upon
closer review, these "alternatives" consider only the binary choice of whether to
retain or rescind the 2021 Rule, without considering less disruptive alternatives.

DOL concedes it rejected the first two "alternatives" out of hand before the final
2024 Rule, and they were not within the ambit of the existing 2021 Rule, nor did
DOL provide analysis on how they might be less disruptive to a complete rescission
of the 2021 Rule. *Id*.

The third "alternative" was for the DOL "to only partially rescind the 2021 IC
Rule." 89 Fed. Reg. at 1661. In other words, it was binary because DOL considered
retaining some of the 2021 Rule and rescinding the rest. It is also not an alternative
within the ambit of the existing 2021 Rule, particularly given that DOL admits it
did not monitor data on the effects of the 2021 Rule as further discussed below.

And DOL's fourth proposed "alternative"—rescinding the 2021 Rule entirely to
provide "guidance"—is a binary choice between complete rescission while retaining
some guidance. It is also not an alternative within the ambit of the 2021 Rule. DOL
clearly wanted to do away with the 2021 Rule entirely, which is unlawful under
well-established principles within the APA's legal framework. 89 Fed. Reg. at 1661.

Moreover, DOL stated in the 2024 Rule that it is not "obligated to wait for more
time to gather data before rescinding the 2021 IC Rule and promulgating a new
rule." 89 Fed. Reg. at 1660. In other words, according to the DOL's unlawful,
rudimentary, and unsophisticated analysis devoid of reasoning, it apparently does
not have to review *any* data when it promulgates a new rule such as the 2024 Rule

and rescinds an old rule like the 2021 Rule. And the 2021 Rule had been in effect for *three years,* so DOL did not have to "wait" to gather such data, which could inform its decisionmaking in coming up with less disruptive alternatives to a complete rescission of the 2021 Rule. The DOL's approach was instead to take a sledgehammer to the 2021 Rule and start over from scratch. Even though it is constrained by law to ensure that it "examined the relevant data and articulated a satisfactory explanation for its action." *Sierra Club*, 939 F.3d at 664.

Why would any reasonable federal agency not review data from the effects of a rule—like the 2021 Rule—that had been in effect for three years? Particularly when the DOL acknowledged that the 2024 Rule that would rescind the 2021 Rule is a "significant regulatory action" with costs to businesses in Year 1 of the new Rule projected to be $148,000,000. It is inexplicable. And no reasonable agency would make such a glaring omission of not reviewing data when rescinding a rule as important and significant as one establishing how businesses must classify workers. DOL promulgated the 2021 Rule "to promote certainty for stakeholders, reduce litigation, and encourage innovation in the economy." 86 Fed. Reg. at 1168. And then DOL rescinded the 2021 Rule without analyzing any data to see if it accomplished its goal.

Consider the data DOL could have reasonably monitored with minimal effort to determine if the 2021 Rule achieved its purpose: questionnaires sent to stakeholders to conduct a survey on whether the 2021 Rule promoted certainty as it claimed; an analysis of court filings and relevant litigation both before and after

promulgation of the 2021 Rule to determine if it reduced litigation; and an assessment on the number of workers being classified as employees versus independent contractors and the relevant impact on the economy and innovation.

DOL 's failure to review data on the effects of the 2021 Rule before rescinding it means it failed to "consider important aspects of the problem before [it]," and this "omission alone causes agency action to be arbitrary and capricious." *See Motor Vehicle Mfrs.*, 463 U.S. at 43. Moreover, DOL's explanation for its decision that it was not obligated to monitor data on the effects of the 2021 Rule before rescinding it "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See id*. Additionally, its failure to consider "relevant factors" like data on the 2021 Rule before rescinding it renders the 2024 Rule unlawful because DOL did not engage in "reasoned decisionmaking." *See Michigan*, 576 U.S. at 750.

*Second*, DOL failed to consider employers' reliance interests on 2021 Rule, and the Plaintiffs' declarations show that they have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent contracting trucking labor.

Although DOL acknowledged it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding the 2021 Rule, it then summarily dismissed that impact and said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." 89 Fed. Reg. at 1660.

But a federal agency like the DOL is required to assess whether there were reliance interests, determine whether those interests were significant, and weigh any such interests against competing policy concerns, *see Regents*, 140 S. Ct. at 1915—all of which DOL failed to do. Even assuming arguendo that DOL assessed employer reliance interests, the 2024 Rule still shows that DOL failed to determine whether employer reliance interests were significant, and it did not weigh employer reliance interests against competing policy concerns. This is unreasoned decisionmaking. *See Michigan*, 576 U.S. at 750.

*Finally*, to the extent that the DOL Defendants rely generally upon *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) and its progeny in their arguments by claiming they are entitled to deference based on agency expertise in promulgating the 2024 Rule, "*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright Enters. v. Raimondo*, 2024 U.S. LEXIS 2882, **61-62 (Jun. 28, 2024).

**B.  The 2024 Rule is outside of DOL's statutory authority.**

The 2024 Rule that rescinded the 2021 Rule is outside of DOL's statutory authority in violation of the APA.

Prior to overruling *Chevron* in its recent decision in *Loper Bright*, the Supreme Court has warned that, when an agency significantly departs from precedent in excess of its authority when interpreting a particular statute, "its interpretation [is] unreasonable." *NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 94 (1995).

Here, it has taken DOL over eighty years since the FLSA's enactment to suddenly "discover" its novel six-factor "totality of the circumstances" patchwork that is the new 2024 Rule. This anomaly alone highlights the 2024 Rule's unreasonableness, and thus DOL promulgated the new Rule outside of its statutory authority. *See Util. Air Regulatory Grp. v. EPA*, 134 S. Ct. 2427, 2444 (2014).

### C. The Plaintiffs will suffer irreparable harm from the 2024 Rule.

Plaintiffs would be irreparably harmed absent an injunction setting the unlawful 2024 Rule aside because it will cause them substantial financial injury with no guarantee of eventual recovery.

Again and as previously discussed, "substantial financial injury" may be "sufficient to show irreparable injury," especially when there is "no guarantee of eventual recovery." *Texas v. EPA*, 829 F.3d at 433; *Alabama Ass'n of Realtors*, 141 S. Ct. at 2489. And "complying with a regulation later held invalid almost always produces irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433.

There is no dispute that the 2024 Rule will cost employers like the Plaintiffs in the new Rule's first year an estimated $148,000,000. 89 Fed. Reg. at 1733. And there is no dispute that the Plaintiffs will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.128, 131, 136, 139, and 144. Accordingly, the DOL Defendants' pending motion automatically fails.

**CONCLUSION**

For these reasons, Plaintiffs respectfully request that the Court deny the DOL

Defendants' motion to dismiss or alternatively for summary judgment (ECF No. 32).

This Court has subject-matter jurisdiction, and Defendants are not entitled to

judgment as a matter of law.


July 2, 2024                                   Respectfully submitted,


                                               /s/ James S. Baehr
M.E. Buck Dougherty III*                       James S. Baehr
Reilly Stephens                                Sarah Harbison
Liberty Justice Center                         Pelican Center for Justice
13341 W. U.S. Hwy. 290, Bldg. 2                400 Poydras Street, # 900
Austin, Texas 78737                            New Orleans, LA 70130
Telephone (512) 481-4400                       Telephone (504) 475-8407
bdougherty@libertyjusticecenter.org            james@pelicaninstitute.org
rstephens@libertyjusticecenter.org             sarah@pelicaninstitue.org

*pending application

*Attorneys for Plaintiffs*