# Exhibit 2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| FRISARD'S TRANSPORTATION, L.L.C.; LOUISIANA MOTOR TRANSPORT ASSOCIATION, INCORPORATED; A & B GROUP, INC.; NORTHLAKE MOVING AND STORAGE, INC.; TRIPLE G. EXPRESS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF LABOR; JULIE SU, *in her official capacity as Acting Secretary of Labor*; JESSICA LOOMAN, *in her official capacity as Administrator of the Wage and Hour Division*; UNITED STATES DEPARTMENT OF LABOR, WAGE AND HOUR DIVISION, <br><br> Defendants. | **Case No. 2:24-cv-00347** <br><br> Section L <br><br> District Judge Fallon <br><br> Magistrate Judge Dossier |

**PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN OPPOSITION**
**TO SUMMARY JUDGMENT PURSUANT TO LR 56.2**
**PRESENTING A GENUINE ISSUE**

Pursuant to LR 56.2, Plaintiffs submit their Statement of Material Facts as to which there is a genuine issue. This LR 56.2 Statement accompanies and supports Plaintiffs' response in opposition to Defendants' motion to dismiss or alternatively for summary judgment (ECF No. 32).

1. In January 2021, the Department of Labor ("DOL") issued a classification rule establishing when a worker qualifies as either an employee or independent contractor (the "2021 Rule"). 86 Fed. Reg. 1168.

2. DOL promulgated the 2021 Rule "to promote certainty for stakeholders,

1

reduce litigation, and encourage innovation in the economy." 86 Fed. Reg. 1168.

3. The DOL's 2021 Rule reconciled decades of inconsistency and set forth a formal interpretation of the traditional standards established in *United States v. Silk*, 331 U.S. 704 (1947), to provide clarity to employers when classifying employees and independent contractors. ROA.95.[1]

4. Specifically, the 2021 Rule found, similarly to the Fifth Circuit in *Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983), that in practice two factors predominate in determining whether a person should be considered an employee or an independent contractor: (1) the nature and degree of the worker's control over work; and (2) the worker's opportunity for profit or loss. ROA.95.

5. Under the 2021 Rule, if these two key factors give a clear answer, that is the end of the analysis. ROA.95. But if those factors point in disparate directions, then there are three additional factors for a court to consider: (3) the amount of skill required for the work; (4) the degree of permanence of the working relationship; and (5) whether the work is part of an integrated unit of production. ROA.96.

6. On January 10, 2024, the DOL issued and published in the Federal Register a new rule effective March 11, 2024, which rescinded the 2021 Rule (the "2024 Rule"). 89 Fed. Reg. 1638.

---

[1] The Record Excerpts filed with Plaintiffs' opening brief at the Fifth Circuit Court of Appeals is attached as **Exhibit 1** to Plaintiffs' response, and the "ROA" designation used in their appellate brief for citations is also used in their response and this LR 56.2 Statement to cite to the record.

7. DOL promulgated the 2024 Rule "to rescind and replace the 2021 IC Rule."[2] 89 Fed. Reg. at 1639.

8. The 2024 Rule expressly states that the new Rule "is a 'significant regulatory action' under section 3(f)(1) of Executive Order 12866." 89 Fed. Reg. at 1725.

9. A "significant regulatory action" under 3(f)(1) means a rule that is likely to: "(1) have an annual effect on the economy of $200 million or more, or adversely affect in a material way a sector of the economy, productivity, competition, jobs, the environment, public health or safety, or state, local, or tribal governments or communities." 89 Fed. Reg. at 1725.

10. "Total regulatory familiarization costs to businesses in Year 1 [of the 2024 Rule] are estimated to be $148,749,744 ($52.80 × 1 hour × 2,817,230) in 2022 dollars." 89 Fed. Reg. at 1733.

11. Unlike the 2021 Rule, the 2024 Rule prescribes a "totality of the circumstances" analysis, including six nonexclusive factors that a court could look to when determining employee status: (1) workers' opportunity for profit or loss depending on managerial skill; (2) investments made by worker and employer; (3) degree of permanence of the work relationship; (4) nature and degree of businesses' control over the worker; (5) the extent to which work performed is an integral part of the potential employer's business; and (6) whether the worker uses specialized skills in performing the work. 89 Fed. Reg. at 1640.

---

[2] DOL refers to the 2021 Rule as the "2021 IC Rule." *See* 89 Fed. Reg. 1638.

12. The DOL claimed that it is not "obligated to wait for more time to gather data before rescinding the 2021 IC Rule and promulgating a new rule." 89 Fed. Reg. at 1660.

13. The DOL did acknowledge that it is "mindful of the impact that changes in the Department's guidance may end up having on the regulated community" by rescinding and replacing the 2021 Rule. 89 Fed. Reg. at 1660.

14. But despite this acknowledgment and recognition that the 2024 Rule is a "significant regulatory action," with costs to businesses in Year 1 of the Rule projected to be $148,000,000, the DOL said that stakeholder reliance interest on the 2021 Rule is "unpersuasive." 89 Fed. Reg. at 1660, 1725, and 1733.

15. Since 2014, Plaintiff Frisard's Transportation, L.L.C. has been a family-owned trucking company specializing in transporting finished goods to stock the shelves of supermarkets and other retail stores, among other cargo, that relies on independent contracting labor as a core necessity of its business. ROA.126-27.

16. Frisard's is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule. ROA.127.

17. Frisard's has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent-contracting labor. ROA.127.

18. Frisard's has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill Frisard's clients' needs. ROA.127.

19. Frisard's transports cargo throughout the southern and eastern United States, from Texas and Nebraska to Maryland and Florida, wherever its customers need cargo delivered. ROA.127.

20. Frisard's contracts with more than thirty owner-operated independent drivers who own their own trucks, decide which loads to carry or not, and who are paid a flat percentage of shipping fee for a given load, plus reimbursable expenses such as fuel which are passed on to the client. ROA.127.

21. Frisard's utilizes only independent owner operators to make deliveries and employs no in-house drivers. ROA.127.

22. By contrast, a related but separate company, Frisard's Trucking Co., employs a staff of in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.127.

23. Frisard's use of independent owner-operators is beneficial to both Frisard's itself, which is able to operate more efficiently and reduce excess costs, and to Frisard's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.127-28.

24. Frisard's will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.128.

25. For example, the 2024 Rule threatens to upend Frisard's business operations, increasing costs, depriving truckers of the opportunity to operate

5

independently within their own business, and potentially driving many of the independent contractors Frisard's relies on out of business, or into different lines of business other than Frisard's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.128.

26. Plaintiff Louisiana Motor Transport Association, Incorporated is a non-profit corporation founded in 1939, and it represents 388 Louisiana trucking and related industry companies. ROA.131.

27. LMTA's mission is to protect and promote Louisiana's trucking industry. ROA.131. Its members include every type of motor carrier in Louisiana, including related and exempt, intrastate and interstate, and for-hire and private. ROA.131. And LMTA champions the trucking industry and advocates for its members on laws and regulations in Baton Rouge, La., and in Washington, D.C. ROA.131.

28. LMTA's members are subject to the FLSA, the 2021 Rule, and the 2024 Rule, and they rely on independent contracting labor as a core necessity of their businesses. ROA.131.

29. Moreover, LMTA's members have relied on the 2021 Rule since its effective date of March 8, 2021, when classifying their independent-contracting labor. ROA.131.

30. LMTA's members' use of independent owner-operators benefits both employer members, who are able to operate more efficiently and reduce excess costs, and to members' independent contractors, who assume more responsibility for their

own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.131.

31. LMTA's members will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.131.

32. For example, the 2024 Rule threatens to upend LMTA's employer members' business operations, increase costs, and deprive independent owner-operator truckers of the opportunity to work independently within their own business. ROA.131.

33. Additionally, the 2024 Rule could potentially drive many of the independent contractors LMTA's employer members rely on out of business, or into different lines of business other than LMTA's members' businesses, depriving them of needed manpower to deliver cargo wherever their clients need it delivered. ROA.132.

34. Plaintiff A & B Group, Inc. is a trucking company in operation since 1995, specializing in delivering liquid and dry bulk long-haul services and transporting cargo to all 50 U.S. states and Canada. ROA.135.

35. A&B is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.135.

36. A&B has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.135.

37. A&B has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.135.

38. A&B contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.135.

39. A&B also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.135.

40. A&B's use of independent owner-operators is beneficial to both A&B itself, which is able to operate more efficiently and reduce excess costs, and to A&B's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.135.

41. A&B will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.136.

42. For example, the 2024 Rule threatens to upend A&B's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors A&B relies on out of business, or into different lines of business other than A&B's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.136.

8

43. Plaintiff Northlake Moving and Storage, Inc. is a trucking company that has operated for over 40 years, specializing in transportation and storage of household goods, office furniture, and special products, and it transports cargo to 48 U.S states. ROA.138.

44. Northlake is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.139.

45. Northlake has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.139.

46. Northlake has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.139.

47. Northlake contracts with drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.139.

48. Northlake also employs in-house drivers who drive company-owned trucks, are typically paid on a salary or hourly wage basis, provided a benefits package, and are required to work set hours and carry loads as assigned. ROA.139.

49. Northlake's use of independent owner-operators is beneficial to both Northlake itself, which is able to operate more efficiently and reduce excess costs, and to Northlake's independent contractors, who assume more responsibility for

9

their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.139.

50. Northlake will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.139.

51. For example, the 2024 Rule threatens to upend Northlake's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Northlake relies on out of business, or into different lines of business other than Northlake's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.139-40.

52. Plaintiff Triple G. Express, Inc. is a family-owned trucking company that has operated since 1985 and is an intermodal carrier serving the Port of New Orleans Markets. ROA.142.

53. Triple G transports cargo throughout the Southeastern United States, including Louisiana, Texas, Mississippi, and Alabama, wherever their clients and customers need cargo delivered. ROA.143.

54. Triple G is an employer subject to the FLSA, the 2021 Rule, and the 2024 Rule, and it relies on independent contracting labor as a core necessity of its business. ROA.143.

55. Triple G has relied on the 2021 Rule since its effective date of March 8, 2021, when classifying its independent contracting labor. ROA.143.

56. Triple G has gross sales of more than $500,000 per year, frequently hauls goods across state lines, and frequently employs independent contractors to drive trucks to fulfill its customers' needs. ROA.143.

57. Triple G contracts with 100 independent drivers who own their own trucks, decide which loads to carry or not, and who are paid based on an agreed-upon schedule, plus reimbursable expenses such as fuel. ROA.143.

58. Triple G utilizes only independent owner-operators to make deliveries and employs no in-house drivers. ROA.143.

59. Triple G's use of independent owner-operators is beneficial to both Triple G's itself, which is able to operate more efficiently and reduce excess costs, and to Triple G's independent contractors, who assume more responsibility for their own business operations but gain autonomy and the opportunity to derive greater profit from their work. ROA.143.

60. Triple G will incur substantial financial injury with no guarantee of eventual recovery as a result of the 2024 Rule. ROA.144.

61. For example, the 2024 Rule threatens to upend Triple G's business operations, increasing costs, depriving truckers of the opportunity to work independently within their own business, and potentially driving many of the contractors Triple G relies on out of business, or into different lines of business other than Triple G's business, depriving it of needed manpower to deliver cargo wherever its clients need it delivered. ROA.144.

July 2, 2024

Respectfully submitted,

/s/ James S. Baehr

M.E. Buck Dougherty III\*  
Reilly Stephens  
Liberty Justice Center  
13341 W. U.S. Hwy. 290, Bldg. 2  
Austin, Texas 78737  
Telephone (512) 481-4400  
bdougherty@libertyjusticecenter.org  
rstephens@libertyjusticecenter.org

James S. Baehr  
Sarah Harbison  
Pelican Center for Justice  
400 Poydras Street, # 900  
New Orleans, LA 70130  
Telephone (504) 475-8407  
james@pelicaninstitute.org  
sarah@pelicaninstitue.org

\*pending application

*Attorneys for Plaintiffs*